Aimee SNYDER, Patricia Snyder, and James Snyder, Appellants–Plaintiffs,

v.

Donald P. COBB, M.D., Hiren R. Patel, M.D., and St. Mary's Medical Center of Evansville, Inc., Appellees–Defendants.

No. 82A01–9305–CV–166.

Court of Appeals of Indiana, First District.

July 28, 1994.

D. Bruce Kehoe, Harry A. Wilson, Wilson Kehoe & Winingham, Indianapolis, Terry A. White, Olsen, Niederhaus, Labhart & White, Evansville, for appellants.

Michael McCray, Brent A. Raibley, Statham, Johnson & McCray, Evansville, Mary Nold Larimore, Laure V. Flaniken, Ice Miller Donadio & Ryan, Indianapolis, R. Thomas Bodkin, Bamberger, Foreman, Oswald and Hahn, Evansville, for appellees.

ROBERTSON, Judge.

Aimee Snyder and her parents, Patricia and James Snyder [Snyder], appeal the summary judgment entered against them in their medical malpractice action against Donald P. Cobb, M.D., Hiren R. Patel, M.D. [the doctors], and the St. Mary's Medical Center of Evansville, Inc. [the hospital]. We reverse.

## FACTS

The facts in the light most favorable to nonmovant Snyder reveal that in the spring of 1984, Patricia Snyder found out she was pregnant with twins. Her estimated due date was January 6, 1985. She received prenatal care from Dr. Cobb, an obstetrician/gynecologist [OB/GYN]. On November 24, 1984, six weeks before her due date, Patricia went into labor and was admitted to the hospital in an attempt to prevent labor and delivery of the twins.

Dr. Cobb examined Patricia on November 27 and determined that the twins were to be born that day. Dr. Patel, an obstetric anesthesiologist, was called in to assist Dr. Cobb. Aimee was born weighing 3 pounds, 2 ounces. She was not breathing properly. Dr. Cobb took her to a table and attempted to resuscitate her. Dr. Patel then came over and also attempted to resuscitate Aimee.

Snyder alleges that the doctors and the hospital were negligent in their attempts at resuscitation and that Aimee suffered perma-

nent brain damage as the result of such negligence. Aimee now suffers from cerebral palsy, delayed development, and a hearing impairment.

Snyder filed her proposed complaint with the Indiana Department of Insurance. The Medical Review Panel issued its opinion that "[t]he evidence does not support the conclusion that the defendant[s] failed to meet the applicable standard of care as charged in the complaint."

Snyder brought the present action in the trial court. Defendants moved for summary judgment on the basis of the opinion of the medical review panel. Snyder submitted affidavits executed by Dr. Gabriel Rosenberg, a pediatrician with expertise in neonatal care, in response to all three defendants' motions. In his affidavits, Dr. Rosenberg stated that he was familiar with the applicable standard of care required of an OB/GYN and an anesthesiologist in communities similar to Evansville, Indiana from November 27, 1984, to the present and with their duties with respect to high risk prenatal situations, delivery, and post-natal situations and the required care thereof. Dr. Rosenberg opined further that the doctors and the hospital breached this standard of care and that Aimee's injuries were caused by the defendants' negligence.

The trial court entered summary judgment in favor of the defendants and this appeal ensued. Additional facts are supplied as necessary.

## DECISION

■ On appeal from the grant of summary judgment, we use the same standard in ascertaining the propriety of summary judgment as does the trial court. *Newhouse v. Farmers National Bank of Shelbyville* (1989), Ind.App., 532 N.E.2d 26, 28. Summary judgment is appropriate and "shall be rendered forthwith if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind.Trial Rule 56(C). Any doubt about the existence of a fact or the reasonable inference to be drawn from it must be resolved in favor of the non-moving party. *Allied Resin Corporation v. Waltz* (1991), Ind., 574 N.E.2d 913.

■ On appeal, however, the party which lost in the trial court has the burden to persuade the appellate tribunal that the trial court's decision was erroneous. *Ind. Department of Revenue v. Caylor–Nickel Clinic* (1992), Ind., 587 N.E.2d 1311, 1313. Our proper role includes the careful scrutiny of the trial court's determination to assure that the non-prevailing party is not improperly prevented from having his day in court. *Id.*

Indiana Trial Rule 56(C) provides that, at the time of filing the motion or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion. A party opposing the motion shall also designate to the court each material issue of fact which that party asserts precludes entry of summary judgment and the evidence relevant thereto. *Id.* No judgment rendered on the motion shall be reversed on the ground that there is a genuine issue of material fact unless the material fact and the evidence relevant thereto shall have been specifically designated to the trial court. T.R. 56(H).

■ Rarely is a medical malpractice case appropriately disposed of by summary judgment, especially when the critical question is whether the physician exercised the degree of care required under the factual circumstances. *Summit Bank v. Panos* (1991), Ind. App., 570 N.E.2d 960, *trans. denied.* This issue is generally a question for the trier of fact and cannot be decided as a matter of law. *Id.*

■ A physician treating a patient is required to possess and exercise that degree of skill and care ordinarily possessed and exercised by a reasonably careful, skillful and prudent practitioner in the same class to which he belongs treating such maladies under the same or similar circumstances. *Vergara v. Doan* (1992), Ind., 593 N.E.2d 185, 187. Generally, in order for a lay jury to know whether a physician complied with the legally prescribed standard of care, the parties must present expert testimony to estab-

lish what a reasonably prudent physician would or would not have done in treating a patient. *Id.* An expert witness acquires the knowledge which is the basis of his expertise either by formal training or by practical experience. *Summit Bank,* 570 N.E.2d 960. Thus, a physician-expert may obtain his expertise through hands-on experience, formal education, specialized training, study of textbooks, performing experiments, or observations. *Id.* The bare assertion of the affiant that he is familiar with the applicable standard of care is adequate to resist summary judgment. *Vogler v. Dominguez* (1993), Ind. App., 624 N.E.2d 56, *trans. denied.*

### I.

Whether Dr. Rosenberg was qualified to render an opinion regarding the standard of care applicable to Dr. Cobb and Dr. Patel under the present circumstances?

■ The specific knowledge of an expert witness is neither determinative of the witness' qualification as an expert nor of the admissibility of his opinion into evidence. *Vogler,* 624 N.E.2d at 60. A witness' competency is determined by his knowledge of the subject matter generally. *Id.* His knowledge of the specific subject or subjects of inquiry goes to the weight to be accorded his opinion, not its admissibility. *Id.* There is no requirement that the expert physician be of the same specialty as the defendant doctor. *See Id.* Nor is there a requirement that the expert physician must have been in practice at the time of the alleged malpractice. *See Summit Bank,* 570 N.E.2d 960. As noted above, a physician's bare assertion that he or she is familiar with the standard of care is sufficient to stave off summary judgment. *Id.; Vogler,* 624 N.E.2d 56.

■ Dr. Rosenberg's qualifications include the training of physicians in the treatment of respiratory problems and the resuscitation and intubation of newborns. He has completed a fellowship in pulmonary pediatrics. There is really no dispute that Dr. Rosenberg is an expert in the resuscitation of newborns.

Moreover, Snyder claims Dr. Cobb and Dr. Patel committed malpractice in resuscitating a newborn child, Aimee Snyder. Neither doctor has asserted that the resuscitation of a newborn is a procedure unique to his respective specialty. Dr. Rosenberg opined that the doctors had deviated from the standard of care that would apply to "any doctor who's delivering a baby."

■ Dr. Rosenberg had knowledge of the subject matter generally. He was therefore qualified to give his opinion regarding the doctors' efforts to resuscitate Aimee shortly after her birth. That he was neither an obstetrician or an anesthesiologist and had never practiced in Evansville, Indiana does not disqualify him as an expert or render his opinion inadmissible; such concerns go to the weight to be accorded his opinion. Dr. Rosenberg's bare assertion that he was familiar with the applicable standard of care was sufficient, and we find no error.

### II.

Whether Dr. Rosenberg's deposition testimony contradicts his affidavits with respect to his knowledge of the applicable standard of care?

The doctors assert that Dr. Rosenberg's deposition testimony contradicts his affidavit with respect to his knowledge of the applicable standard of care. The doctors cite *Gaboury v. Ireland Road Grace Brethren, Inc.* (1983), Ind., 446 N.E.2d 1310, for the proposition that the non-movant on summary judgment may not create issues of fact by pointing to affidavit testimony which contradicts the witness' sworn testimony in a prior deposition.

The doctors point out that Dr. Rosenberg admitted in his deposition that he was not qualified in either obstetrics or anesthesiology and had never practiced in Evansville, Indiana. They point out further that Dr. Rosenberg admitted that his qualifications were limited to pediatrics.

■ In reviewing a motion for summary judgment, all evidence must be construed in favor of the non-movant and all doubts as to the existence of a material issue must be resolved against the movant. *Pepkowski v. Life of Indiana Insurance Co.*

(1988), Ind.App., 526 N.E.2d 1015, *vacated in part on other grounds,* 535 N.E.2d 1164. Even if the facts are not in dispute, summary judgment is inappropriate if conflicting inferences arise. *Id.* Applying this deferential standard, we interpret Dr. Rosenberg's deposition testimony as not in conflict with his affidavit. Taken as a whole, Dr. Rosenberg's deposition testimony does not suggest that he was not aware of the standard to be applied to Drs. Cobb and Patel. On the contrary, Dr. Rosenberg testified in his deposition that he understood the concept of the standard of care to be "what the usual and expected performance of a like doctor in a like situation would do under the same circumstances." Dr. Rosenberg's testimony shows, not that he was unfamiliar with the standard to be applied to obstetricians or anesthesiologists in 1984 Evansville, but that he believed the specialties or localities involved were "irrelevant" and that the Drs. Cobb and Patel had breached the standard of care that would apply to "any doctor who's delivering a baby."

Dr. Rosenberg's deposition testimony does not contradict his affidavit. Therefore, his affidavit is sufficient to stave off summary judgment.

### III.

Whether the hospital is entitled to summary judgment?

Snyder's complaint against the hospital alleged that its employees, the nurses, were negligent in their assistance to the doctors and their negligence caused Snyder's injuries. Dr. Rosenberg testified that the hospital was negligent for its "failure to have written policies delineating responsibility for immediate new born care, resuscitation ... for multiple births and other unusual circumstances."

Below, the hospital relied on the opinion of the Medical Review Panel in support of its motion for summary judgment. As noted in the FACTS, the Panel opined that the defendants had not breached the applicable standard of care. On appeal, the hospital asserts for the first time that the trial court's entry of summary judgment was appropriate be- cause Snyder failed to present any evidence on the issue of proximate cause.

We may affirm the trial court's grant of summary judgment using alternate legal theories only if those alternatives are found in the designated portions of the record. *Jackson v. Blanchard* (1992), Ind.App., 601 N.E.2d 411. The party moving for summary judgment bears the burden of proving the nonexistence of a genuine issue of material fact, and if there is any doubt, the motion should be denied. *Hoskins v. Sharp* (1994), Ind.App., 629 N.E.2d 1271, *trans. pending.* Unless and until the moving party makes such a showing, the non-movant may rest upon the allegations of his pleading and other designated material. *Hinkle v. Niehaus Lumber Co.* (1987), Ind.App., 510 N.E.2d 198, *vacated on other grounds,* (1988) 525 N.E.2d 1243. When the movant on summary judgment relies only upon the opinion of the Medical Review Panel which found no breach of the standard of care but was silent on the issue of proximate cause, the plaintiff non-movant is not obligated to present expert testimony on the issue of proximate cause. *Hoskins,* 629 N.E.2d 1271.

Under the present circumstances, Snyder was not required to submit expert testimony on the issue of proximate cause. Therefore, summary judgment in favor of the hospital may not be sustained on this basis.

### CONCLUSION

The trial court's entry of summary judgment was erroneous with respect to all defendants. We reverse and remand for trial.

Judgment reversed.

STATON and GARRARD, JJ., concur.