Rick BUNCH and Cindy Bunch,
Appellants–Plaintiffs,

v.

Kamal K. TIWARI, M.D.,
Appellee–Defendant.

No. 53A04–9901–CV–19.

Court of Appeals of Indiana.

April 27, 1999.

Robert D. Epstein, Epstein & Frisch, Indianapolis, Indiana, Attorney for Appellants.

Gary J. Clendening, Kendra G. Gjerdingen, Mallor Clendening Grodner & Bohrer, Bloomington, Indiana, Attorneys for Appellee.

## OPINION

KIRSCH, Judge

In this medical malpractice action, Rick Bunch and Cindy Bunch (collectively, "Bunch") appeal the trial court's order granting summary judgment in favor of Kamal K. Tiwari, M.D. ("Dr.Tiwari"). Bunch presents two issues which we restate as follows:

I. Whether the trial court erred in striking the affidavit of Bunch's medical expert submitted in opposition to summary judgment for failure to comply with the requirements of Indiana Trial Rule 56(E).

II. Whether there are genuine issues of material fact precluding summary judgment of the case.

We reverse and remand.

### FACTS AND PROCEDURAL HISTORY

The facts in the light most favorable to Bunch establish that on August 12, 1991, Rick presented to Bloomington Hospital for a pre-surgery consultation regarding an outpatient knee operation he was to have performed the following day. Accompanied by his wife, Cindy, and his mother, Gloria, Rick met with the nurse who explained the procedure. During the course of this meeting, Gloria inquired about how Rick was going to be anesthetized, and stated adamantly that she did not want her son to have a spinal anesthetic because of complications she had experienced with one in the past. The nurse assured the family that the anesthesiologist, Dr. Tiwari, would not use a spinal anesthesia on Rick and that Rick would simply be put to sleep. Rick then signed two consent forms, one entitled "General Anesthesia." *Record* at 79.

On the day of the surgery, August 13, 1991, Dr. Tiwari was running behind schedule in the operating room. Due to the delay, the nurse allowed Cindy and Gloria to wait with Rick in the surgical holding area, where Rick was lying on a gurney and dressed in a surgical gown. Thereafter, the nurse came into the holding area and told Rick that Dr. Tiwari was still running behind but that she would begin his IV. After affixing the IV, the nurse injected a shot of Demerol into the IV to help Rick relax. Some time later, the nurse came into the holding area again to advise Rick that because of the continuing delays, she would give him another shot of

Demerol and Dr. Tiwari would complete the administration of anesthesia in the operating room. Neither Rick, Cindy, nor Gloria saw Dr. Tiwari prior to surgery.[1]

Upon being wheeled into the operating room, a third shot of Demerol was put into Rick's IV, this time by Dr. Tiwari. It was not until Rick was pre-medicated and lying on the operating table that Dr. Tiwari told Rick he was going to administer a spinal anesthetic. In performing the injection, Dr. Tiwari poked Rick several times in the lower back, causing Rick's arms to flail and resulting in a severe burning pain down his back and into his right buttock and leg. In the recovery room following the procedure, Rick continued to complain of excruciating burning sensations shooting through his right buttock and leg. He was kept in Bloomington Hospital overnight for observation as a result of the pain. Despite extensive medical treatment since the date of the operation, Rick's complaints of pain have persisted.

Bunch filed a proposed complaint against Dr. Tiwari with the Indiana Department of Insurance alleging technical negligence in the administering of the spinal anesthetic. A subsequent amended complaint alleged that Dr. Tiwari had also failed to obtain informed consent from Bunch prior to administering the spinal anesthetic. The medical review panel unanimously opined that Dr. Tiwari's conduct with regard to the administration of the spinal anesthesia did not fall below the applicable standard of care. The panel also found, however, that there remained a material issue of fact not requiring expert opinion with regard to the issue of informed consent, but that the conduct complained of was not a factor in the resultant damages.

Thereafter, Bunch filed a medical malpractice action against Dr. Tiwari which mirrored the allegations of the proposed complaint. After answering the complaint, Dr. Tiwari moved for summary judgment relying on the unanimous opinion of the medical review panel. In response, Bunch submitted the affida-

vits of two medical experts, Dr. Sy Rabins and Dr. Michael Turner. At the summary judgment hearing, Dr. Tiwari made an oral motion to strike the affidavit of Dr. Rabins for failing to comply with the requirements of Indiana Trial Rule 56(E). The trial court struck the affidavit of Dr. Rabins and determined that the affidavit of Dr. Turner standing alone was insufficient to refute the medical review panel's opinion and demonstrate the existence of a material issue of fact. Dr. Tiwari's motion for summary judgment was granted. Bunch now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

■ Our analysis proceeds from the premise that summary judgment is a lethal weapon and courts must be ever mindful of its aims and targets and beware of overkill in its use. *Schrum v. Moskaluk*, 655 N.E.2d 561, 564 (Ind.Ct.App.1995) (citing *Place v. Sagamore Center, Inc.*, 604 N.E.2d 671, 673 (Ind.Ct.App.1992), *trans. denied*). Summary judgment is appropriate only if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Ind. T.R. 56(C); *Brown v. Banta*, 682 N.E.2d 582, 584 (Ind.Ct.App. 1997). Rarely is a negligence action properly disposed of by summary judgment, particularly when the critical question for resolution is whether the defendant exercised the requisite degree of care under the circumstances. *Summit Bank v. Panos*, 570 N.E.2d 960, 964 (Ind.Ct.App.1991) (quoting *Stumph v. Foster*, 524 N.E.2d 812, 814 (Ind.Ct.App.1988)), *trans. denied.* This issue is generally a question for the trier of fact, and not answerable as a matter of law. *Id.*

■ In the instant case, the trial court entered specific findings of fact and conclusions of law thereon. Although such findings aid appellate review, they are not binding on this court. *Reid v. Ragsdale*, 702 N.E.2d

---

1. The designated evidence on this point is in dispute. Dr. Tiwari testified in his deposition that he saw Rick on more than one occasion in the surgical holding area prior to surgery, that he began the IV, and that he had a conversation with Rick during which he obtained a medical history and determined the type of anesthesia to be used. Dr. Tiwari further testified that the nurses in the holding area were aware Rick was to receive a spinal anesthetic and had prepared the tray of instruments accordingly.

367, 369 (Ind.Ct.App.1998) (citing *Althaus v. Evansville Courier Co.*, 615 N.E.2d 441, 444 (Ind.Ct.App.1993)). Instead, when reviewing an entry of summary judgment, we stand in the shoes of the trial court. *Simms v. Schweikher*, 651 N.E.2d 348, 349 (Ind.Ct. App.1995), *trans. denied.* We do not weigh the evidence but will consider the designated facts in the light most favorable to the nonmoving party. *Id.* (citing *Reed v. Luzny*, 627 N.E.2d 1362, 1363 (Ind.Ct.App.1994), *trans. denied* ). All doubts as to the existence of a factual issue must be resolved in the nonmovant's favor. *Schrum v. Moskaluk*, 655 N.E.2d 561, 564 (Ind.Ct.App.1995) (citing *Thornhill v. Deka–Di Riding Stables*, 643 N.E.2d 983, 986 (Ind.Ct.App.1994), *trans. denied* ), *trans. denied.*

■■■ A trial court's grant of summary judgment is "clothed with a presumption of validity," and the appellant has the burden of demonstrating that the grant of summary judgment was erroneous. *Brown*, 682 N.E.2d at 584 (quoting *Stevenson v. Hamilton Mut. Ins. Co.*, 672 N.E.2d 467, 471 (Ind. Ct.App.1996), *trans. denied* ). However, we must carefully assess the trial court's decision to ensure the nonmovant was not improperly denied his or her day in court. *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 667 (Ind.1997).

## II. Dr. Rabins' Affidavit

Bunch contends that the trial court erred in striking the affidavit of Dr. Rabins for failing to comply with the requirements of Indiana Trial Rule 56(E). The court's rationale for doing so, as articulated in its findings of facts and conclusions thereon,[2] was two-fold:

"Dr. Rabins stated in his Affidavit that he relied on a phone conversation with Mr. and Mrs. Bunch. *Such a conversation is not admissible evidence, and thus Dr. Rabins' opinion, insofar as it relies on such conversation, must be disregarded.* In addition, Dr. Rabins stated that he relied on "certain medical records" including but not limited to, "the medical records of Mr.

Bunch at Bloomington Hospital, selected records of Mr. Bunch from Dr. Michael Turner of Indianapolis Neurosurgical and at Methodist Hospital, Indianapolis, Indiana, and depositions of Mr. Ricky Bunch and Dr. Kamal Tiwari." *None of the records specifically listed as those relied on by Dr. Rabins are attached to the Affidavit as required by TR 56(E). . . .* Accordingly, the Affidavit must be stricken for failure to comply with the requirements established by TR 56(E) for an affidavit submitted in opposition to summary judgment."

*Record* at 271–74 (emphases added). In addition to the court's findings, Dr. Tiwari further argues that Dr. Rabins' affidavit was properly stricken because it was not based on first-hand personal knowledge. We cannot agree with either proposition and hold that the trial court's ruling with regard to Dr. Rabins' affidavit was erroneous.

■■■ First, as it relates to Dr. Rabins' telephone interview of Rick and Cindy Bunch, Indiana Evidence Rule 703 states specifically that "[e]xperts may testify to opinions based on inadmissible evidence, provided that it is of the type reasonably relied upon by experts in the field." Moreover, this court has consistently held that an expert may utilize hearsay information in forming his opinion. *Cox v. American Aggregates Corp.*, 580 N.E.2d 679, 685 (Ind.Ct.App.1991) (citing *Rubin v. Johnson*, 550 N.E.2d 324, 328 (Ind.Ct.App.1990), *trans. denied* ), *trans. denied.* Clearly, a personal interview to ascertain additional facts not readily apparent in the medical records, particularly in light of the factual dispute regarding informed consent, was the type of information Dr. Rabins would have reasonably relied upon as an expert in a medical malpractice action, and should not have been disregarded.

■■■ Secondly, Indiana Trial Rule 56(E) reads, "Sworn or certified copies not previously self-authenticated of all papers or parts thereof referred to in an affidavit shall be attached thereto *or served therewith.*" (Em-

---

2. While our holding today reverses the trial court's grant of summary judgment, we commend the trial court for the thoroughness of its determination in this case. Its Findings of Fact and Conclusions of Law have aided tremendously our review.

phasis added). Bunch submitted several exhibits as part of Plaintiff's Brief in Response to Defendant's Motion for Summary Judgment, including the medical records from Bloomington Hospital (Exhibit D), the depositions of Rick and Dr. Tiwari (Exhibits E and F, respectively), and the affidavits of Dr. Rabins and Dr. Turner (Exhibits A and B, respectively). These items were specifically designated in Plaintiff's Designation of Evidence pursuant to Indiana Trial Rule 56(C). Given that the records upon which Dr. Rabins relied in rendering his expert opinion were served contemporaneously with Dr. Rabins' affidavit, we conclude that Bunch did comply with the requirements of Trial Rule 56(E). The trial court erred in determining otherwise.

We note that Dr. Rabins' affidavit states that he relied in part on the medical records of Dr. Turner at Indianapolis Neurosurgical and Methodist Hospital in rendering his opinion. These records, however, were not attached to the affidavit or served therewith as required by Trial Rule 56(E). Nor were Dr. Turner's records designated as evidence in accordance with Trial Rule 56(C). Under Trial Rule 56(C), neither the trial court nor the appellate court can look beyond whatever evidence has been designated. *Miller v. Monsanto Co.*, 626 N.E.2d 538, 542 (Ind.Ct.App.1993). Moreover, where the affidavit does not meet the strict requirements of Trial Rule 56(E), the court may disregard it upon its own motion. *Id.* (citing *Lee v. Schroeder*, 529 N.E.2d 349, 352 (Ind.Ct.App.1988), *trans. denied*). Nevertheless, in reviewing Dr. Rabins' affidavit as a whole, we find that his opinions were supported entirely by the Bloomington Hospital records and that evidence which was specifically designated and submitted in compliance with the trial rules.

Thirdly, while Trial Rule 56(E) mandates that affidavits be made on personal knowledge, this does not mean that a physician who qualifies as an expert must obtain his knowledge based solely on first-hand experience. *Summit Bank*, 570 N.E.2d at 965. Our courts have never held that a scientific witness can only testify from facts learned by personal experience. *Id.* (citing *Ortho Pharmaceutical Corp. v. Chapman*, 180 Ind.App. 33, 388 N.E.2d 541 (1979)). "A witness who testifies as an expert need not base her opinion testimony on personal knowledge if the opinion is based on evidence of a type normally found reliable and customarily relied upon by others in the witness's profession or area of expertise." *Id.* (citing *Kranda v. Houser–Norborg Medical Corp.*, 419 N.E.2d 1024 (Ind.Ct.App.1981)). Indeed, knowledge may be acquired through hands-on experience, formal education, specialized training, study of textbooks, performing experiments, and observation. *Id.* (citing 13 W. MILLER, INDIANA PRACTICE § 702.103 at 35–37 (1984)). Thus, contrary to Dr. Tiwari's contentions, it was not necessary for Dr. Rabins to possess first-hand knowledge of Bunch's treatment and condition for him to render an expert medical opinion in this case. As such, the trial court erred in striking the entirety of Dr. Rabins' affidavit for failing to comply with the requirements of Trial Rule 56.[3]

## III. Genuine Issues of Material Fact

Bunch next contends that the trial court erred in granting Dr. Tiwari's motion for summary judgment because the evidence was sufficient to refute the medical review panel's opinion and create a genuine issue of material fact precluding such a determination. We agree to the extent that summary judgment should not have been

---

3. While Dr. Rabins' entire affidavit should not have been stricken by the court, we do take issue with Paragraph No. 9 of the affidavit, which states that Dr. Tiwari's testimony is "definitely contrary to the Bunchs' [sic] testimony and creates a classical issue of fact to be determined by the jury." *Record* at 44. Mere assertions of conclusions of law or opinions in an affidavit are improper. *See Dvorak v. Christ*, 692 N.E.2d 920, 925 (Ind.Ct.App.1998). However, such statements do not mandate a total disregard of all contents of the affidavit; the trial court need only ignore the improper portions thereof. *Kahf v. Charleston South Apartments*, 461 N.E.2d 723, 737, n. 6 (Ind.Ct.App.1984) (citing *Celina Mut. Ins. Co. v. Forister*, 438 N.E.2d 1007 (Ind.Ct.App. 1982); *French v. Hickman Moving & Storage*, 400 N.E.2d 1384 (Ind.Ct.App.1980)), *trans. denied.*

granted on Bunch's claim against Dr. Tiwari under the doctrine of informed consent.[4]

■■■■ To establish a prima facie case of medical malpractice, a plaintiff must demonstrate: (1) the defendant's duty in relation to the plaintiff; (2) the defendant's failure to conform its conduct to the requisite standard of care required by the relationship forming the duty; and, (3) an injury to the plaintiff resulting from that failure. *Oelling v. Rao*, 593 N.E.2d 189, 190 (Ind.1992). This generally requires expert testimony showing that the physician's performance fell below the applicable standard of care and that his negligence was a proximate cause of the plaintiff's injuries. *Etienne v. Caputi*, 679 N.E.2d 922, 924 (Ind.Ct.App.1997) (citing *Bethke v. Gammon*, 590 N.E.2d 573, 574–75 (Ind.Ct. App.1991)). When a medical review panel renders an opinion in favor of the physician, the plaintiff must then come forward with expert medical testimony to rebut the panel's opinion in order to survive summary judgment. *Brown*, 682 N.E.2d at 584 (citing *Chambers by Hamm v. Ludlow*, 598 N.E.2d 1111, 1116 (Ind.Ct.App.1992)). "An affidavit which establishes an expert's credentials, states that the expert has reviewed the relevant medical records, and sets forth the expert's conclusion that the defendants violated the standard of care in their treatment which in turn caused the complained of injury, is sufficient to demonstrate the existence of a material fact, thus making summary judgment inappropriate." *Randolph County Hosp. v. Livingston*, 650 N.E.2d 1215, 1219 (Ind.Ct.App.1995) (citing *Jordan v. Deery*, 609 N.E.2d 1104, 1110 (Ind.1993)), *trans. denied.*

■■■■ In an informed consent action such as the instant case, the critical issue is whether the patient was subjected to the inherent risks of the proposed treatment without being permitted to intelligently reject or accept that treatment. *Revord v. Russell*, 401 N.E.2d 763, 767 (Ind.Ct.App.1980). Under the doctrine of informed consent, expert opinion is generally necessary to establish the causal connection between the inadequate disclosure and the resulting damages. *Id.* (citing *Ellis v. Smith*, 528 N.E.2d 826 (Ind.Ct.App.1988)).

■■■■ Here, the medical review panel issued a unanimous decision that there was a question of fact *not* requiring expert opinion on the issue of whether Rick had been subjected to the inherent risks of a spinal anesthetic without being permitted to intelligently reject or accept that procedure. The panel went on to conclude, however, that the conduct complained of, i.e., the failure to obtain informed consent, was not a factor in the resultant damages. Dr. Tiwari submitted only this opinion to support his summary judgment motion. In so doing, he placed before Bunch one single contention to be rebutted: that Dr. Tiwari was entitled to judgment as a matter of law because his conduct, negligent or not, did not proximately cause the damages suffered.

In *Randolph County Hospital*, we held:

"When the movant on summary judgment relies only upon the opinion of the medical review panel which found no breach of the standard of care but was silent as to the other elements of malpractice, the plaintiff non-movant is only obligated to present expert testimony on the standard of care element of malpractice. Accordingly, once the panel opinion was introduced, the burden of proof shifted to Livingston to respond by designating evidentiary matter

---

4. In reviewing the designated materials, the appellate briefs, and particularly the affidavits of Dr. Rabins and Dr. Turner, we find that Bunch failed to come forward with any expert medical testimony to rebut the medical review panel's unanimous opinion that Dr. Tiwari's administering of the spinal anesthetic itself did not fall below the standard of care. *See Chambers by Hamm v. Ludlow*, 598 N.E.2d 1111, 1116 (Ind. Ct.App.1992). If medical expert opinion is not in conflict regarding whether the physician's conduct met the requisite standard of care, there are no genuine triable issues. *Simms*, 651 N.E.2d at

350 (citing *Marquis v. Battersby*, 443 N.E.2d 1202, 1203 (Ind.Ct.App.1982), *trans. denied*). Moreover, where there is a unanimous medical review panel determination favoring the defendant and no countervailing expert opinion, the defendant is entitled to judgment as a matter of law. *McGee v. Bonaventura*, 605 N.E.2d 792, 794 (Ind.Ct.App.1993). As such, the trial court properly granted summary judgment on Bunch's claim of technical negligence in the administration of the spinal anesthesia, and we limit our discussion to the issue of informed consent.

which demonstrated a genuine issue of fact regarding the standard of care issue. *Because Defendants presented no evidence regarding any of the other elements of malpractice, Livingston was free to rest upon her pleadings regarding the other elements.*" *Id.,* 650 N.E.2d at 1218 (emphasis added). Likewise, when Dr. Tiwari relied upon the opinion of the medical review panel which found in his favor *only* on the element of proximate cause but which determined that factual issues remained as to the other elements of an informed consent claim, Bunch needed to respond by demonstrating the existence of a question of fact *only* as to proximate cause. Bunch satisfied this burden of proof by submitting the affidavit of Dr. Turner.

 Dr. Turner states in his affidavit that he is a licensed and practicing physician in the State of Indiana, board certified in surgery of the nervous system and spine, and has been treating Rick since August 1992. The affidavit provides that Rick suffers from pain compatible with a nerve root injury which can occur with spinal puncture or an injection of spinal anesthetic. Dr. Turner further states that in his expert medical opinion:

"[I]f Mr. Bunch was pain-free in his right leg prior to the spinal anesthetic and came out of surgery with immediate pain in his right leg and a dysesthic type of pain, then this pain was likely related to and caused by the spinal puncture or injection of spinal anesthetic."

*Record* at 46–47. This evidence was sufficient to refute the medical review panel's opinion and create a genuine issue of material fact.[5]

Accordingly, the trial court erred in granting Dr. Tiwari's motion for summary judgment on Bunch's claim under the doctrine of informed consent. It is important to note

---

5. Any lack of detail in an affidavit goes to the weight and credibility to be assigned to it, not to whether it is adequate to create a question for the trier of fact. *Jordan,* 609 N.E.2d at 1111 (Ind.1993).

6. Dr. Rabins' affidavit establishes the existence of a material issue of fact as to *all* the elements of a

that our decision stands irrespective of the sufficiency of Dr. Rabins' affidavit, which was not required to overcome the burden of summary judgment.[6] Dr. Turner's affidavit, standing alone or taken in conjunction with Dr. Rabins' affidavit, was more than adequate to demonstrate a genuine issue of material fact precluding a summary determination. The affidavit of Dr. Rabins merely lends credence to the existence of a factual issue and the inappropriateness of summary judgment in this case.

We reverse and remand.

GARRARD, J., and NAJAM, J., concur.

prima facie malpractice case brought under the doctrine of informed consent. It articulates the requisite standard of care, that Dr. Tiwari breached that standard of care, and that Dr. Tiwari's conduct caused the resultant damages suffered.