**Brent R. McINTOSH, M.D.,**
**Appellant–Defendant,**

v.

**Joe M. CUMMINS, Appellee–Plaintiff.**

No. 49A04–0107–CV–290.

Court of Appeals of Indiana.

Dec. 27, 2001.

—————

Steven J. Cohen, Zeigler Cohen & Koch, Indianapolis, IN, Attorney for Appellant.

Joseph J. Reiswerg, Indianapolis, IN, Attorney for Appellee.

## OPINION

MATHIAS, Judge.

Dr. Brent R. McIntosh ("Dr. McIntosh"), an orthopedic surgeon, appeals the trial court's order denying his motion for summary judgment. Dr. McIntosh raises the following issue for our review: whether the trial court erred in finding a genuine issue of material fact in a motion for summary judgment supported by a favorable medical review panel opinion and opposed only by the testimony of a family practitioner.

We affirm.

### Facts and Procedural History

The facts most favorable to the judgment reveal that in October 1992, Joe Cummins ("Cummins") fractured his right femur and hip while deer hunting near Greenwood, Indiana. As a result of his injuries, Dr. McIntosh performed surgery on Cummins, inserting an intramedullary nail in Cummins' femur and fixating his hip with screws. Cummins was hospitalized for approximately one month.

In November and December 1992, Cummins was off work, on crutches, and in physical therapy. On December 4, 1992, Dr. McIntosh took an x-ray of Cummins'

femur. The x-ray report noted "a paucity of callus [1] formation at the distal femoral fracture," and that "[i]t would be nice to see more callus formation." [2] Appellant's App. pp. 93–94. Dr. McIntosh took another x-ray on January 11, 1993, and noted an "interval improvement in the callus formation," and he instructed Cummins to "gradually increase weight bearing." Appellant's App. pp. 98–99. Cummins went off his crutches in late March 1993, and was released back to work in late April 1993.

On June 6, 1993, Cummins "felt something strange in his leg." Appellant's App. p. 24. Dr. McIntosh took an x-ray, and discovered that the intermedullary nail had broken. Dr. McIntosh removed the nail and replaced it with a larger one.

After the second surgery, Cummins experienced more turmoil than he had with the first nail, and it was discovered that there was a misalignment, that the fracture was causing pain by putting stress on the knee. Cummins opted to see another physician, Dr. Frank Kolisek ("Dr. Kolisek") who explained the misalignment, and cut a wedge out of Cummins' femur and changed the angle of the bone. After six months, Cummins' pain had not subsided and Dr. Kolisek referred Cummins to Dr. Kevin Scheid ("Dr. Scheid"). Dr. Scheid explained that Cummins' bones were not healing properly and a bone graft would have to be performed. Dr. Scheid placed a plate outside Cummins' femur and secured it with screws.

On June 9, 1995, Cummins filed his proposed complaint with the Indiana Department of Insurance, alleging that Dr. McIntosh breached the applicable standard of care by permitting Cummins to return to

---

1. Callus is the hard bony tissue that develops around the ends of a fractured bone during healing. American Heritage Stadman's Medical Dictionary 122 (1995).

2. Dr. McIntosh indicated in his deposition that he was concerned because poor callus formation was an indication of slow healing. Appellant's App. p. 95.

work and to full weight bearing without the benefit of x-rays to determine if the bones had properly healed. The Medical Review Panel issued its opinion finding that "the evidence does not support the conclusion that Defendant, Brent R. McIntosh, M.D., failed to meet the applicable standard of care as charged in the Complaint." Appellant's App. p. 12.

On May 28, 1999, Cummins brought the present action in the trial court. On June 11, 1999, Dr. McIntosh moved for summary judgment attaching the Medical Review Panel opinion in support of his argument. Shortly thereafter, Cummins filed his response attaching the affidavit of Dr. Norman Glanzman ("Dr. Glanzman"), a family practitioner. Dr. Glanzman's affidavit stated that he had an opportunity to treat numerous individuals with fractures and to review their x-rays for adequate healing, and that he was of the opinion that Dr. McIntosh deviated from the standard of care in the treatment of Cummins by failing to take an x-ray to determine if sufficient healing had taken place before releasing Cummins to return to work and to full weight bearing.

The trial court denied Dr. McIntosh's motion for summary judgment, and after proper certification and acceptance, this interlocutory appeal ensued. Additional facts will be provided as necessary.

### Standard of Review

■ It is well established that when reviewing the trial court's ruling on a motion for summary judgment we apply the same standard as the trial court, resolving any doubts as to any fact, or inference to be drawn therefrom, in favor of the non-moving party. *Jones v. Minick*, 697 N.E.2d 496, 498–99 (Ind.Ct.App.1998), *trans. denied*. Summary judgment is only appropriate if the designated evidentiary material shows that there is no genuine issue of material fact and the moving party is enti-

tled to judgment as a matter of law. *Id.; see also* Ind. Trial Rule 56(C).

■ The party moving for summary judgment bears the initial burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Hoskins v. Sharp*, 629 N.E.2d 1271, 1276 (Ind.Ct.App.1994). Once the movant sustains this burden, the burden shifts to the non-moving party to set forth specifically designated evidence showing the existence of a genuine issue. *Id.* at 1276–77. A medical malpractice case based upon negligence is rarely an appropriate case for disposal by summary judgment, particularly when the critical question for resolution is whether the defendant exercised the requisite degree of care under the circumstances. *Bunch v. Tiwari*, 711 N.E.2d 844, 847 (Ind.Ct.App. 1999). This issue is generally a question for the trier of fact, and not answerable as a matter of law. *Id.*

### Discussion and Decision

■ To prevail in a medical malpractice action, the plaintiff must prove three elements: "(1) a duty on the part of the defendant in relation to the plaintiff; (2) a failure to conform his conduct to the requisite standard of care required by the relationship; and (3) an injury to the plaintiff resulting from that failure." *Hoskins*, 629 N.E.2d at 1277 (quoting *Oelling v. Rao*, 593 N.E.2d 189, 190 (Ind.1992)). When a medical review panel renders an opinion in favor of the physician, the plaintiff must then come forward with expert medical testimony to rebut the panel's opinion. *Bunch*, 711 N.E.2d at 850. Failure to provide sufficient expert testimony will usually subject the plaintiff's claim to summary disposition. *Whyde v. Czarkowski*, 659 N.E.2d 625, 627 (Ind.Ct.App.1995), *trans. denied*.

██ Dr. McIntosh argues that, having provided the trial court with a favorable Medical Review Panel opinion, he is entitled to summary judgment because Cummins failed to sustain his burden to establish the existence of a genuine issue of material fact. Specifically, he argues that the evidence Cummins utilized to establish a genuine issue, Dr. Glanzman's affidavit, was insufficient because Dr. Glanzman failed to state that he was familiar with the applicable standard of care.

 Physicians are required to possess and exercise that degree of skill and care ordinarily possessed and exercised by a reasonably careful, skillful and prudent practitioner in the same class to which he belongs treating such maladies under the same or similar circumstances. *Snyder v. Cobb*, 638 N.E.2d 442, 445 (Ind.Ct.App. 1994), *trans. denied* (citing *Vergara v. Doan*, 593 N.E.2d 185, 187 (Ind.1992)). As such, in a medical malpractice action, an opposing affidavit submitted to establish that a defendant doctor breached the applicable standard of care must set forth that the expert is familiar with the proper standard of care under the same or similar circumstances, what that standard of care is, and that the defendant's treatment of the plaintiff fell below that standard. *Lusk v. Swanson*, 753 N.E.2d 748, 753 (Ind.Ct.App.2001).

According to Dr. Glanzman's affidavit, he:

1. is a licensed medical physician within the State of Indiana . . .
2. is the Medical Coordinator of Helix Health which is a multi-disciplinary health center which specializes in returning individuals with serious injuries, including bone fractures . . .
3. has reviewed the depositions of Mr. Cummins, the defendant, and reviewed Dr. McIntosh's medical records of the plaintiff.
4. had an opportunity to treat numerous individuals with fractures and review their x-rays for adequate healing, and [is] of the opinion that Dr. McIntosh deviated from the standard of care.

Appellant's App. p. 35. Dr. Glanzman's affidavit goes on to detail how he believes Dr. McIntosh breached the applicable standard of care by allowing Cummins to return to work and full weight bearing without the benefit of an x-ray to detect proper healing, the breach of which was a contributing factor to Cummins' injuries. *Id.* at 35–36. Although, the affidavit does not directly state that Dr. Glanzman is familiar with the applicable standard of care, it is evident from the content of the affidavit that Dr. Glanzman's employment and experience made him indeed familiar with the applicable standard in the treatment of bone fractures and x-rays. Moreover, we have previously held that an affidavit which establishes an expert's credentials, states that the expert has reviewed the relevant medical records, and sets forth the expert's conclusions that the defendant violated the standard of care in their treatment, which in turn caused the complained of injury, is sufficient to demonstrate the existence of a material fact, thus making summary judgment inappropriate. *Jones*, 697 N.E.2d at 499.

 Dr. McIntosh also argues that Dr. Glanzman's affidavit is not sufficient to create the existence of a genuine issue of material fact because Dr. Glanzman practices a completely different specialty than Dr. McIntosh; Dr. Glanzman is a family practitioner and Dr. McIntosh is a orthopedic surgeon. Br. of Appellant at 15. However, there is no requirement that the expert physician be of the same specialty as the defendant doctor. *Snyder*, 638 N.E.2d at 446 (citing *Vogler*, 624 N.E.2d at

60). Provided there is at least a generalized and supportable conclusion by the affiant that he is familiar with the applicable standard of care, *see Aldrich v. Coda*, 732 N.E.2d 243, 245 (Ind.Ct.App.2000), the specific knowledge of an expert witness is neither determinative of the witness' qualification as an expert nor the admissibility of his opinion into evidence. *Snyder*, 638 N.E.2d at 446. A witness' competency is determined by his knowledge of the subject matter generally, and his knowledge of the specific subject of inquiry goes to the weight to be accorded his opinion, not its admissibility. *Id.* Thus, the fact that Dr. Glanzman is a family practitioner and not an orthopedic surgeon is not dispositive.

Finally, Dr. McIntosh argues that despite the assertions contained within Dr. Glanzman's affidavit, Dr. Glanzman admitted in his deposition testimony that he was not familiar with the applicable standard of care, and his testimony must therefore be excluded. Br. of Appellant at 14. However, Cummins points to deposition testimony where Dr. Glanzman testified that he was an expert in callus formation, and that he had treated numerous post-fracture patients. Appellant's App. pp. 183, 185. In reviewing a motion for summary judgment, all evidence must be construed in favor of the non-moving party and all doubts as to the existence of a material issue must be resolved against the movant. *Snyder*, 638 N.E.2d at 446. Even if facts are not in dispute, summary judgment is inappropriate if conflicting inferences arise. *Id.* Applying this deferential standard we must agree with the trial court and resolve these conflicts in the evidence in favor of Cummins as the non-movant.

## Conclusion

Based on the foregoing, we find that the trial court properly determined that Dr.

Glanzman's affidavit was sufficient to raise a genuine issue of material fact and the trial court's entry of summary judgment was therefore proper.

Affirmed.

DARDEN, J., and VAIDIK, J., concur.