**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**BRENT WELKE**
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**JEFFREY C. GERISH**
Plunkett Cooney
Bloomfield Hills, Michigan

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CITI CAPITAL FINANCIAL LLC, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 29A02-1307-PL-643 |
| | ) | |
| HUNTINGTON NATIONAL BANK, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable William J. Hughes, Judge
The Honorable William P. Greenaway, Magistrate
Cause No. 29D03-0808-PL-1062

**August 20, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BARTEAU, Senior Judge**

STATEMENT OF THE CASE

Citi Capital Financial, LLC, appeals from the trial court's order granting partial summary judgment in favor of Huntington National Bank in a lien priority dispute between the two entities, contending that the trial court erred by giving effect to Huntington's mortgage notwithstanding the mistaken legal description contained in the mortgage document, and despite the fact that Mortgage Electronic Registration Systems, Inc. ("MERS") was named in the mortgage document as the nominee and mortgagee before assigning its interest. We affirm.

FACTS AND PROCEDURAL HISTORY

On August 30, 2007, Crown Residential Group, LLC f/k/a Crown Custom Homes, Charles Brown, Adolph L. Buckner, Aaron Coffer, and Kendrick L. Coleman (collectively "Crown") obtained a warranty deed on property purchased from The Marina Limited Partnership. The legal description of the property was as follows:

> Lot Number Ninety-six (96) in Canal Place, Section Two, a subdivision in Hamilton County, Indiana, as per plat thereof, recorded as Instrument NO. 200400012292 in Plat Cabinet 3 Slide 355, in the Office of the Recorder of Hamilton County, Indiana.

Appellant's App. at 315. In connection with that purchase Crown executed a promissory note in the amount of $825,000.00 in favor of Huntington. HBI Title Services, Inc., Huntington's full-service title company, was the closing agent for this loan. As such, HBI provided loan closing, title clearing, and title insurance services, and a HBI escrow agent was present at the closing. The Huntington Note was secured by a mortgage granted by

2

Crown to MERS[1] as nominee for Huntington on real property commonly known as 10881 Harbor Bay Drive, Fortville, Indiana, 46060-9012. The Huntington Mortgage, however, contained the following incorrect legal description:

> Lot No. 36 in Section Three of Cardinal Woods, as per plat thereof recorded on May 1, 1985 as instrument no. 85-1765 in the office of the Recorder of Hancock County, Indiana.

Appellee's App. at 26. The Huntington Mortgage contained the correct common address of the real property the parties had agreed would be subject to the mortgage. When the Huntington Mortgage was recorded on September 6, 2007, as instrument number 2007050747 in the Office of the Recorder of Hamilton County, Indiana, the word "Hancock" was stricken and the word "Hamilton" was typed below the space where the word "Hancock" had appeared. Id. The parties do not dispute that the legal description contained in the Huntington Mortgage is incorrect.

Jennifer J. Hayden, the Hamilton County Recorder at the time, averred in her affidavit that although the Huntington Mortgage was recorded in Hamilton County, it was not indexed against any lot in Hamilton County because the legal description could not be matched with any parcel of real estate there. Appellant's App. at 148.

Crown executed a balloon promissory note in the amount of $350,000.00 in favor

---

[1] "In the mid-1990s . . . a consortium of investment banks created Mortgage Electronic Registration Systems, Inc. (MERS). MERS maintains 'a computer database designed to track servicing and ownership rights of mortgage loans anywhere in the United States.' MERS member banks list MERS as both 'nominee' for Lender and as 'mortgagee' on their mortgage documents. MERS member banks can then buy and sell the note among themselves without recording an assignment of the mortgage. In the event of default, MERS simply assigns the mortgage to whichever member bank currently owns the note, and that bank forecloses on the borrower. Today, about 60 percent of the nation's residential mortgages are recorded in the name of MERS rather than in the name of the bank, trust, or company that actually has a meaningful economic interest in the repayment of the debt." *Citimortgage v. Barabas*, 975 N.E.2d 805, 809 (Ind. 2012) (internal citations omitted).

of Citi Capital. The Citi Capital Note referred to the correct legal and common description of the property. The Citi Capital Note was secured by an open line of credit mortgage on the property and also contained the correct legal and common description of the property to be encumbered. The Citi Capital Mortgage was recorded on February 20, 2009 as instrument number 2009008665 in the Hamilton County Recorder's Office.

Citi Capital's managing member and authorized signer was Steven M. Rosenbaum. Rosenbaum was also a realtor and acted as an originator or broker regarding financing for houses. Rosenbaum and Brown, who was the general manager of Crown, had been business associates for a number of years. Rosenbaum had presented the purchase of the property to Brown and was present at the closing of the construction loan Crown executed with Huntington.

On October 6, 2008, Crown granted a mortgage on the property to Greenfield Banking Company in the amount of $72,000.00, which partially secured a promissory note executed on that date by Crown in the principal amount of $491,881.69. The Greenfield Mortgage was recorded on October 20, 2008 as instrument number 2008052814 in the Hamilton County Recorder's Office.

MERS assigned the Huntington Mortgage to Huntington in a document dated May 28, 2009. The assignment was recorded in Hamilton County on June 16, 2009 as instrument number 2009036245.

In his deposition, Rosenbaum stated that after Huntington had advanced approximately $670,000.00 toward construction costs, a question arose about the social security number Brown had supplied to Huntington. Thereafter, Huntington ceased to

4

allow Crown to draw for construction costs. Without that funding, Crown did not pay several contractors. Five of those contractors filed mechanic's liens against the property in the Hamilton County Recorder's Office. The trial court ultimately granted the mechanic's lienholders' motions for summary judgment in their foreclosure actions, finding that the liens were superior to other liens because they had been validly entered on the correct legal description prior to other liens, and that the lienholders should share on a *pari passu* basis. The judgments on those mechanic's liens were assigned to Lawyers Title Insurance Corporation. Fidelity National Title Insurance Company is the successor by merger with Lawyers.

Huntington did not defend in the action involving the mechanic's liens, but filed an action against all other parties, except for Citi Capital, on June 5, 2009. Huntington's action was consolidated with the prior action involving the mechanic's liens. Citi Capital filed motions to intervene in both actions, and sought relief from judgment contending that while its mortgage was inferior to the mechanic's liens, its mortgage was superior to the Huntington (MERS) Mortgage. Citi Capital was allowed to intervene, and an order was entered on August 5, 2009, for a sheriff's sale of the property. On September 24, 2009, two of the mechanic's lienholders filed a motion to strike Huntington's complaint[2] alleging that Huntington did not have a lien on the actual premises. The trial court struck the complaint by order entered on October 20, 2009.

---

[2] Although the motions to strike filed on September 24, 2009, make reference to an "amended complaint," it is apparent from the record before us that the motions referred to the original complaint filed on June 5, 2009. Huntington's "Amended Complaint" was not filed until October 6, 2009, and the order granting the motions was entered on October 19, 2009, and filed on October 20, 2009. All parties have proceeded as if the Amended Complaint filed on October 6, 2009, is the pertinent complaint giving rise to these issues.

Huntington filed an amended complaint to foreclose on the property naming additional parties on October 6, 2009. Attached to the complaint was the mortgage with MERS listed as nominee for Huntington and with the county name "Hancock" stricken and the word "Hamilton" typed underneath. Despite the change to attempt to reflect the correct county, the legal description remained incorrect in all other respects in that mortgage. Also in the amended complaint, was the valid legal description of the property intended to be encumbered by the Huntington Mortgage and a request for reformation of the mortgage to correct the "scrivener's error." Appellant's App. at 98, 103.

On December 3, 2009, a joint motion for summary judgment was filed against Huntington, alleging that the actual property could not be located with certainty based on the legal description provided in the Huntington Mortgage. The trial court entered a judgment finding that the interests of the mechanic's lienholders was superior to those of the remaining parties, Citi Capital, Huntington, and Greenfield, but without determining the validity and priority of those other mortgages.

Huntington and Citi Capital filed cross motions for summary judgment to resolve the issue of lien priority. In June of 2010, Greenfield filed a stipulation of lien priority in which Greenfield and Huntington agreed that Huntington's mortgage took priority over Greenfield's mortgage. In an order from a hearing held on November 15, 2011, the trial court concluded that Huntington's mortgage created a valid security interest in the property that had lien priority over the mortgage held by Citi Capital. The trial court later entered an order on June 28, 2013, declaring its prior order to be a final appealable order. Citi Capital now appeals.

DISCUSSION AND DECISION

This appeal is from an order on cross-motions for summary judgment. Our analysis proceeds from the premise that "[s]ummary judgment is a lethal weapon and courts must be ever mindful of its aims and targets and beware of overkill in its use." *Schrum v. Moskaluk*, 655 N.E.2d 561, 564 (Ind. Ct. App. 1995) (citing *Place v. Sagamore Ctr, Inc.*, 604 N.E.2d 671, 673 (Ind. Ct. App. 1992), *trans. denied*). Summary judgment is appropriate only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ind. T.R. 56(C); *Brown v. Banta*, 682 N.E.2d 582, 584 (Ind. Ct. App. 1997).

In the instant case, the trial court entered specific findings of fact and conclusions of law thereon. Although such findings aid appellate review, they are not binding on this court. *Reid v. Ragsdale*, 702 N.E.2d 367, 369 (Ind. Ct. App. 1998) (citing *Althaus v. Evansville Courier Co.*, 615 N.E.2d 441, 444 (Ind. Ct. App. 1993)). Instead, when reviewing an entry of summary judgment, we stand in the shoes of the trial court. *Simms v. Schweikher*, 651 N.E.2d 348, 349 (Ind. Ct. App. 1995), *trans. denied*. We do not weigh the evidence but will consider the designated facts in the light most favorable to the nonmoving party. *Id.* (citing *Reed v. Luzny*, 627 N.E.2d 1362, 1363 (Ind. Ct. App. 1994), *trans. denied*). All doubts as to the existence of a factual issue must be resolved in the nonmovant's favor. *Schrum*, 655 N.E.2d at 564 (citing *Thornhill v. Deka-Di Riding Stables*, 643 N.E.2d 983, 986 (Ind. Ct. App. 1994), *trans. denied*), *trans. denied*.

When a trial court grants summary judgment, we carefully scrutinize that determination to ensure that a party was not improperly prevented from having his or her

day in court. *Cox v. N. Ind. Pub. Serv. Co., Inc.*, 848 N.E.2d 690, 695-96 (Ind. Ct. App. 2006). In this case, the parties filed cross-motions for summary judgment. However, the fact that cross-motions for summary judgment were made does not alter our standard of review. *Mahan v. Am. Standard Ins. Co.*, 862 N.E.2d 669, 676 (Ind. Ct. App. 2007), *trans. denied*. "Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law." *Ind. Farmers Mut. Ins. Group v. Blaskie*, 727 N.E.2d 13, 15 (Ind. Ct. App. 2000).

"In order for a mortgage to be effective, it must contain a description of the land intended to be covered sufficient to identify it." *Keybank Nat. Ass'n v. NBD Bank*, 699 N.E.2d 322, 326 (Ind. Ct. App. 1998). "The test for determining the sufficiency of a legal description is whether the tract intended to be mortgaged can be located with certainty by referring to the description." *Id.*

> The purpose of the recording statute, IND.CODE § 32-1-2-16,[3] is to provide protection to subsequent purchasers, lessees, and mortgagees. Instruments will have priority according to the time of the filing thereof. A record outside the chain of title does not provide notice to bona fide purchasers for value. The recording of an instrument in its proper book is fundamental to the scheme of providing constructive notice through the records. The duty rests on the lienholder to ensure that his mortgage is properly recorded within the chain of title.

*Id.* at 327 (internal citations omitted and footnote added).

It is undisputed that the legal description in the Huntington Mortgage does not describe the property to be encumbered by the mortgage. At the hearing on the motion for summary judgment, counsel for Huntington conceded that the mortgage was not in the

---

[3] Now located at Ind. Code §32-21-4-1 (2008).

8

chain of title for the property. Therefore, Huntington also conceded that it could not rely on constructive notice to support its argument in favor of lien priority, but instead was relying on actual notice. Huntington claims that because Rosenbaum was present at the closing, he had actual notice of the existence of the Huntington Mortgage, and as he was Citi Capital's only employee, Citi Capital had actual notice as well. Evidence designated to the trial court supports a finding that Rosenbaum was present at the closing and had actual notice of the Huntington Mortgage. Consequently, Citi Capital had actual notice of the Huntington Mortgage.

Actual knowledge of the intention to hold a mortgage, however, does not cure the defective legal description contained in the mortgage document, such that the mortgage is considered to be valid. Huntington sought reformation of the mortgage to reflect the correct legal description, but the trial court's order did not explicitly grant that equitable remedy. Our Supreme Court has stated,

> It is undoubtedly the law that an erroneous description of real estate in a mortgage that is full, and consistently complete within itself, and clearly and correctly identifies another body of land, will not be reformed to embrace an entirely different tract, to the prejudice of a subsequent mortgagee, who accepted his mortgage in ignorance of the mistake, and in bona fide reliance upon the appearance of the public record.

*Rinehardt v. Reifers*, 64 N.E. 459, 459 (Ind. 1902).

Although Huntington requested reformation based on what it characterized as a scrivener's error, the legal description here contains more than a typographical error, *see Keybank*, 699 N.E.2d at 326 (typographical error did not nullify mortgage), and does not simply encompass more property than was intended to be encumbered, *see Matter of Estate*

*of Lawrence*, 565 N.E.2d 357, 359 (Ind. Ct. App. 1991) (legal description encompassing more property than intended to be encumbered nonetheless valid). The mortgage although recorded, albeit outside the chain of title, could not be indexed. The mortgage would seem to be invalid. However, additional designated evidence supports the trial court's decision on these fairly unique facts.

"In reviewing a trial court's grant of summary judgment, we may use alternate legal theories to affirm the order if they are found in the designated materials." *Squires v. Utility/Trailers of Indianapolis, Inc.*, 686 N.E.2d 416, 419 (Ind. Ct. App. 1997) (citing *Snyder v. Cobb*, 638 N.E.2d 442, 447 (Ind. Ct. App. 1994)). "Similarly, '[w]e will affirm the grant of summary judgment if it is sustainable on any theory or basis in the evidentiary matter designated to the court.'" *Id*. (quoting *Short v. Haywood Printing Co., Inc.*, 667 N.E.2d 209, 211 (Ind. Ct. App. 1996), *reh'g denied*, *trans. denied*, 683 N.E.2d 582)).

Huntington's amended complaint sought reformation of the mortgage instrument and set forth the correct legal description of the property to be encumbered in addition to the incorrect legal description set forth in the mortgage. Brown's affidavit was also designated to the trial court. In pertinent part, that affidavit avers as follows:

> 3. That closing was held by and all documents prepared by or at the behest of HBI Title Services, Inc. and/or Huntington Title Services, Inc., which were disclosed by an Affiliated Business Arrangement Disclosure distributed in the closing packet to be wholly owned indirect subsidiaries of Huntington.

> 4. That neither Brown nor Crown had any input into the preparation of the closing documents, but instead relied upon the accuracy and expertise of Huntington's closing subsidiaries, and did not notice at the time that Crown would not own the land that would be encumbered of record.

> . . . .

10

7. Said Mortgage was secured by a purported lien upon the following described land:
"LOT NO. 36 IN SECTION THREE OF CARDINAL WOODS, AS PER PLAT THEREOF RECORDED ON MAY 1, 1985 AS INSTRUMENT NO. 85-1765 IN THE OFFICE OF THE RECORDER OF HANCOCK COUNTY INDIANA"

8. Neither Brown nor Crown participated further in the recording of the Mortgage after the closing.

. . . .

10. A great while later Brown learned that the land description on the Mortgage as recorded contained an interlineation which changed the county as Brown had executed it in Paragraph 7 above from "Hancock" to "Hamilton".

. . . .

12. That neither Brown nor Crown has ever been contacted by Huntington or MERS or anyone claiming to be associated with them to correct the Mortgage to MERS to cause a replacement mortgage to be executed which actually encumbered the property owned by Crown.

13. That Brown has at all times been aware that at closing Crown signed the attached Error and Omissions/Compliance Agreement.

14. Crown would have signed a replacement mortgage upon request pursuant to said Agreement if Huntington or MERS would have first released the subject Mortgage and executed or prepared any curative conveyances or documents which would release any liability Crown would have to the owners of the land described in the aforesaid Paragraph 7, which Brown has determined is an actual tract in Hancock County, Indiana, but neither Brown nor Crown has ever been called on to perform pursuant to that Agreement.

Appellant's App. p. 206-07.

It is clear from those materials that the original mortgage does not describe the property that the parties intended it to control. We addressed a similar scenario in *Beneficial Financial I Inc. v. Hatton*, 998 N.E.2d 232 (Ind. Ct. App. 2013). In that case,

11

the parties were in agreement that the mortgage did not describe the property intended to

be encumbered and reformation was sought.  We stated the following:

> Also, the boilerplate law that governs this situation is not in dispute. These principles were set out in *Estate of Reasor v. Putnam Cnty.,* 635 N.E.2d 153, 158 (Ind. 1994), as follows:
>
> > [R]eformation is "an extreme equitable remedy to relieve the parties of mutual mistake or of fraud.  *Board of Comm'rs of Hamilton County v. Owens* (1894), 138 Ind. 183, 186, 37 N.E. 602."  The remedy of reformation is extreme because written instruments are presumed to reflect the intentions of the parties to those instruments.
> >
> > In cases involving mutual mistake such as this one, the party seeking reformation must establish the true intentions of the parties to an instrument, that a mistake was made, that the mistake was mutual, and that the instrument therefore does not reflect the true intentions of the parties.  As the Court of Appeals in *Pearson* explained:
> >
> > > The primary purpose of reformation is to effectuate the common intentions of all parties to an instrument which were incorrectly reduced to writing.  It follows that a grant of reformation is necessarily predicated upon a prior understanding between all parties on essential terms.  Otherwise, there would be no standard to which an instrument could be reformed.
> >
> > [*Pearson v. Winfield,* 160 Ind.App. 613, 618-19, 313 N.E.2d 95, 99 (1974).]
>
> (Footnote and some citations to authority omitted.)  The Court added that "a party seeking reformation must also show the original intent or agreement of the parties by clear and convincing evidence."  *Id.* at 159.  Thus, in order to prevail, it was incumbent upon Beneficial to prove by clear and convincing evidence that the original intent of Beneficial and the Hattons was to describe a different piece of real estate than that which was in fact described in the mortgage instrument.

*Beneficial*, 998 N.E.2d at 235.

12

Therefore, the trial court's summary judgment is affirmable because Huntington established by clear and convincing evidence the intent of the parties, that a mistake was made that was mutual, and that reformation is appropriate because the legal description contained in the mortgage does not reflect the true intentions of the parties.

Citi Capital also argues that its mortgage takes priority for the additional reason that MERS was the nominee of the Huntington mortgage, and MERS's assignment of the mortgage to Huntington determines the relevant date for purposes of lien priority. Citi Capital asserts that because its mortgage contained the correct legal and common address for the property and was recorded prior to the MERS assignment, its mortgage has priority.

In *Barabas*, our Supreme Court re-emphasized, with respect to an assignment from MERS to a member bank, that "[t]he assignee of rights under a contract stands in the shoes of the assignor and can assert any rights that the assignor could have asserted." 975 N.E.2d at 813. Here, as in *Barabas*, the parties intended to designate MERS as an agent of the lender, in this case, Huntington. Although the issue in *Barabas* had to do with Citimortgage's ability to intervene in a mortgage foreclosure action, when the mortgage was assigned from one member bank to another, MERS's role in the transaction was defined as that of holding bare legal title to the mortgage, but not as owner of the note, and as an agent of the holder of the note.

Additionally, in *Lunsford v. Deutsche Bank Trust Co. Americas as Trustee*, 996 N.E.2d 815 (Ind. Ct. App. 2013), we were asked to review a lien priority dispute between a holder of a land contract, Lunsford, and the holder of a promissory note and mortgage, Deutsche Bank. MERS was the nominee of the original holder of the promissory note, and

13

that promissory note and mortgage was recorded. The promissory note ultimately was endorsed to Deutsche Bank and MERS's assignment of the mortgage to Deutsche Bank was recorded. The assignment from MERS occurred after Lunsford recorded the land contract, which was recorded after the original recording of the promissory note and mortgage. Lunsford contended that the date of the assignment from MERS to Deutsche Bank controlled the lien priority issue between him and Deutsche Bank. We concluded, however, citing Indiana Code sections 32-21-4-1 through 2, that the recording of the original mortgage perfects a lien on the real estate. *Lunsford*, 996 N.E.2d at 822. Therefore, the recording of the original mortgage, which occurred more than six months before recording of the land contract, was senior in priority to the land contract. *Id.* Similarly here, the recording of the mortgage entitles Huntington to senior priority over Citi Capital regardless of the date of MERS's assignment to Huntington.

CONCLUSION

In light of the foregoing, we affirm the trial court's judgment.

Affirmed.

ROBB, J., and BRADFORD, J., concur.