Teresa C. MILLS, Appellant–Plaintiff,

v.

Carlos R. BERRIOS, M.D., OrthoIndy, and Clarian Health Partners d/b/a Methodist Hospital, Appellees–Defendants.

No. 49A05–0509–CV–524.

Court of Appeals of Indiana.

Aug. 4, 2006.

Karen B. Neiswinger, Indianapolis, IN, Attorney for Appellant.

John David Hoover, Sarah Stites Fanzini, William J. Spalding, Hoover Hull LLP, Indianapolis, IN, Attorneys for Appellees Carlos R. Berrios, M.D., and Orthoindy.

Michael G. Getty, Hill, Fulwider, McDowell, Funk & Matthews, Indianapolis, IN, Attorney for Appellee Clarian Health Partners.

## OPINION

CRONE, Judge.

### Case Summary

Teresa C. Mills appeals the trial court's entry of summary judgment in favor of Carlos R. Berrios, M.D., OrthoIndy, and Clarian Health Partners d/b/a Methodist Hospital (collectively referred to as "Healthcare Providers").[1] We reverse and remand.

1. In its appellee's brief, Clarian Healthcare  Partners d/b/a Methodist Hospital states that

## Issue

The dispositive issue is whether the trial court abused its discretion in finding that the admissible portions of the affidavit of Mills's medical expert were legally insufficient to establish a genuine issue of material fact.

## Facts and Procedural History[2]

On July 6, 2000, Dr. Carlos Berrios, an orthopedic surgeon practicing at OrthoIndy, performed surgery at Methodist Hospital on Mills to remove her right kneecap due to chronic pain. Following the surgery, a long leg cast was applied to immobilize Mills's knee. On July 11, 2000, she was released from Methodist Hospital. Her hospital records from July 6 to 10, 2000, show that Mills experienced pain, but make no mention of heel pain or abnormal sensations.

On July 12, 2000, Mills was admitted to the emergency room at Methodist Hospital complaining of an inability to urinate and pain in her right leg. The record shows that her "ankle is rubbing in cast and cast is coming apart around the toes." Appellant's App. at 135. The record does not indicate that a physician performed an assessment regarding her ankle rubbing in the cast. "The cast was not windowed." Id.[3]

On July 14, 2000, Dr. Berrios found a 1.5 cm by 1.5 cm pressure ulcer on Mills's heel. Dr. Berrios surgically removed the dead tissue. Mills was in "quite a bit of pain" and was admitted to Methodist Hospital for wound care and pain control. Id. at 136. The hospital record indicates that Mills had a Stage II–III pressure ulcer on her right heel. On July 18, 19, and 21, 2000, additional surgeries were performed to remove dead tissue from Mills's heel. As of July 27, 2000, the wound had enlarged to 2.5 cm by 2.5 cm.

On October 9, 2001, Mills filed a personal injury complaint against Healthcare Providers with the Indiana Department of Insurance. On May 27, 2004, the medical review panel issued an opinion stating that the evidence did not support the conclusion that Healthcare Providers failed to comply with the appropriate standard of care.

On April 20, 2005, Mills filed a personal injury complaint against Healthcare Providers in Marion Superior Court. On April 22, 2005, Dr. Berrios and OrthoIndy moved for summary judgment and filed their designation of evidence, consisting of the medical review panel's opinion. On April 26, 2005, Mills filed a motion for extension of time to respond to the summary judgment motion. On April 27, 2005, Dr. Berrios and OrthoIndy filed an objection to Mills's motion for extension of time. On April 28, 2005, the trial court denied Mills's motion for extension of time. On

---

it is more properly referred to as Clarian Healthcare Partners, Inc., Methodist ● I.U. ● Riley. Clarian's Appellee's Br. at 1. In this opinion, we refer to it simply as "Clarian" when it is necessary to differentiate it from the other appellees.

**2.** Mills did not designate her medical records in opposition to Healthcare Providers' motions for summary judgment, and therefore they are not in the record before us. The facts regarding her medical care included herein are based solely on the portions of her expert's affidavit that were not stricken by the trial court. We note that the better practice

is to designate the relevant medical records. See Ind. Trial Rule 56(E) ("Sworn or certified copies not previously self-authenticated of all papers or parts thereof referred to in an affidavit shall be attached thereto or served herewith.").

**3.** We note that "windowed" is not a medical term. Window, when used as a transitive verb, means "to furnish with windows or window-like openings." Oxford English Dictionary, *http://oed.com* (last visited July 25, 2006). Thus, we infer that Dr. Pohnert meant that an opening was not cut in the cast to view Mills's ankle.

April 29, 2005, Clarian filed its motion for summary judgment and designation of evidence, also consisting of the medical review panel's opinion, and joined in the objection to Mills's motion for extension of time.

On April 30, 2005, Mills filed a motion for change of judge, which the trial court granted on May 5, 2005. On May 25, 2005, Mills timely filed her brief in opposition to Healthcare Providers' motions for summary judgment and her designation of evidence, consisting of her affidavit, the affidavit of her expert, Dr. William Pohnert, M.D., and the affidavit of a private investigator, Dean E. Jessup (who photographed Mills's heel on July 31, 2000), with attached photographs of Mills's heel.

On August 22, 2005, the trial court held a hearing on the motions for summary judgment. At the hearing, Healthcare Providers orally moved to strike Mills's own affidavit, arguing that it had not been executed in a manner that subjected Mills to the penalties of perjury. Additionally, they argued that Dr. Pohnert's affidavit was inadmissible for two reasons: (1) Mills's medical records were not attached or designated as evidence; and (2) it was impermissibly based on Mills's statements and subjective symptoms. Mills moved to amend her affidavit within twenty-four hours, or even by the close of business that day, to add appropriate language that would subject Mills to the penalties of perjury and permit the admission of her affidavit. Mills also moved for an extension of time to respond to Healthcare Providers' motion to strike. The trial court

denied Mills's motions and took the summary judgment motions under advisement. Later that day, the trial court (1) granted Healthcare Providers' motion to strike Mills's affidavit; (2) denied Healthcare Providers' motion to strike Dr. Pohnert's affidavit in its entirety, "as portions of the affidavit would be properly struck and other portions would not be"; (3) struck the portions of Dr. Pohnert's affidavit that referred to Mills's affidavit;[4] (4) found that the portions of Dr. Pohnert's affidavit that remained were legally insufficient to oppose the designation of Healthcare Providers; and (5) entered summary judgment in favor of Healthcare Providers. *Id.* at 9.

On August 25, 2005, Mills filed a motion to correct error, which the trial court denied on August 26, 2005. This appeal ensued.

## Discussion and Decision

### I. Genuine Issue of Material Fact

■ Mills asserts that the trial court abused its discretion in determining that the portions of Dr. Pohnert's affidavit that remained after all references to her affidavit were stricken were legally insufficient to preclude summary judgment in favor of Healthcare Providers.[5] Our standard of review is well settled:

Summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving

4. The trial court did not specify which portions of Dr. Pohnert's affidavit it struck, stating, "As the portions subject to being struck consist of words and sometime phrases that appear in mid-sentence the court simply ignores those portions of the affidavit subject to the motion." Appellant's App. at 9. Our

review would have been facilitated had the trial court specifically indicated the portions of Dr. Pohnert's affidavit it chose to ignore.

5. Mills does not argue that Jessup's affidavit and the attached photograph of her heel establish a genuine issue of material fact.

party. Review of a summary judgment motion is limited to those materials designated to the trial court. We must carefully review a decision on a summary judgment motion to ensure that a party was not improperly denied its day in court. Additionally, when material facts are not in dispute, our review is limited to determining whether the trial court correctly applied the law to the undisputed facts. When there are no disputed facts with regard to a motion for summary judgment and the question presented is a pure question of law, we review the matter de novo.

*Bennett v. CrownLife Ins. Co.,* 776 N.E.2d 1264, 1268 (Ind.Ct.App.2002) (some citations and quotation marks omitted). This court will affirm an order granting summary judgment on any legal basis supported by the designated evidence. *Merrill v. Knauf,* 771 N.E.2d 1258, 1264 (Ind. Ct.App.2002), *trans. denied.*

■ To prevail in a medical malpractice action, the plaintiff must prove three elements: "(1) a duty on the part of the defendant in relation to the plaintiff; (2) a failure to conform his conduct to the requisite standard of care required by the relationship; and (3) an injury to the plaintiff resulting from that failure." *Oelling v. Rao,* 593 N.E.2d 189, 190 (Ind.1992). The physician has a duty to conform to the standard of care of a reasonably prudent physician in providing care to a patient. *Bowman v. Beghin,* 713 N.E.2d 913, 916 (Ind.Ct.App.1999). More specifically, the physician is "required to possess and exercise that degree of skill and care ordinarily possessed and exercised by a reasonably careful, skillful and prudent practitioner in the same class to which he belongs treating such maladies under the same or similar circumstances." *McIntosh v. Cummins,* 759 N.E.2d 1180, 1184 (Ind.Ct.App.

2001), *trans. denied* (2002). Care that falls below the requisite standard establishes a breach of the physician's duty. *Bowman,* 713 N.E.2d at 916.

■ When a medical review panel issues an opinion in favor of the physician, the plaintiff must present expert medical testimony to negate the panel's opinion. *Bunch v. Tiwari,* 711 N.E.2d 844, 850 (Ind.Ct.App.1999). If the plaintiff fails to provide sufficient expert testimony, summary judgment should be granted in favor of the defendants. *Whyde v. Czarkowski,* 659 N.E.2d 625, 627 (Ind.Ct.App.1995), *trans. denied* (1996). However, a medical malpractice case based upon negligence is rarely appropriate for disposal by summary judgment, particularly when the critical issue is whether the defendant exercised the appropriate standard of care under the circumstances. *Bunch,* 711 N.E.2d at 847. This issue is generally inappropriate for resolution as a matter of law and is a question that should be reserved for the trier of fact. *Id.*

■ An affidavit that establishes an expert's credentials as a medical expert, states that the expert has reviewed the pertinent medical records, and sets forth the expert's conclusion that the defendants failed to comply with the appropriate standard of care in their treatment thereby causing the complained of injury, is sufficient to demonstrate the existence of a material fact, thus making summary judgment inappropriate. *Jordan v. Deery,* 609 N.E.2d 1104, 1111 (Ind.1993). Mills contends that Dr. Pohnert's affidavit, ignoring the portions that refer to her affidavit, is sufficient to rebut the medical review panel's opinion that the evidence does not establish that Healthcare Providers failed to comply with the appropriate standard of

care.[6] We agree. In his affidavit, Dr. Pohnert states that he is an orthopaedic surgeon, certified as such by the American Board of Orthopaedic Surgery since 1974. He states that he has personal knowledge of the standard of care applicable to Healthcare Providers under the facts and circumstances of this case. He states that he reviewed the OrthoIndy and Methodist Hospital records pertaining to Mills's surgery and subsequent care, as well as the July 31, 2000 photograph of her heel. He then sets forth the relevant facts found in these records and renders his expert opinion. Dr. Pohnert opines that "[t]he appearance and location of the wound are consistent with failure to comply with the standard of care to properly pad and protect [Mills]'s heel during cast application, and such failure resulted in the heel ulcer, which could have been prevented if the standard of care had been observed." Appellant's App. at 137.

In sum, Dr. Pohnert's affidavit sets forth the materials he reviewed, his opinion as to the standard of care required, the facts which support his opinion that Healthcare Providers failed to comply with the standard of care, and the damages that resulted therefrom. Healthcare Providers nonetheless assert that Dr. Pohnert's affidavit is insufficient to establish a genuine issue of material fact because Mills did not designate the medical records reviewed by Dr. Pohnert. At the summary judgment hearing, Healthcare Providers relied upon this argument to support their motion to strike Dr. Pohnert's affidavit. In denying their motion to completely strike Dr. Pohnert's affidavit, it would appear that the trial court rejected this argument. On appeal, however, Healthcare Providers do not argue that the trial court erred in denying their motion to strike Dr. Pohnert's affidavit in its entirety. Rather, they now attempt to rephrase this argument in terms of the legal sufficiency of Dr. Pohnert's affidavit. In support, they cite *Bunch*, 711 N.E.2d 844.

In *Bunch*, this Court considered whether the trial court abused its discretion in striking an expert's affidavit for non-compliance with Trial Rule 56(E) where the medical records relied upon by the expert were not *attached* to the expert's affidavit. We concluded that Trial Rule 56(E) does not require that the medical records be attached to the expert's affidavit. *Id.* at 848–49. We then concluded that the trial court abused its discretion in striking the expert's affidavit, noting that the expert relied upon medical records that the plaintiff had designated. *Id.* at 849. In *Bunch*, we did not address the argument Healthcare Providers made to the trial court in their motion to strike, i.e., whether an expert's affidavit must be stricken where the party neither attaches nor designates the medical records relied on by the expert in formulating his opinion. Further, that issue is not before us because Healthcare Providers has not challenged the trial

---

6. Healthcare Providers contend that even the portions of Dr. Pohnert's affidavit remaining after references to Mills's affidavit are ignored are inextricably tied to Mills's affidavit. We disagree. Dr. Pohnert's statements regarding the facts based on his review of Mills's medical records and his opinion that "the appearance and location of the wound are consistent with failure to comply with the standard of care to properly pad and protect [Mills]'s heel during cast application" are not tied to Mills's affidavit. Appellant's App. at 137. Conse-

quently, we need not address Healthcare Providers' contention that the remaining portions of Dr. Pohnert's affidavit are legally insufficient because they are impermissibly based on Mills's statements and subjective symptoms. We would observe, however, that the viability of the case on which Healthcare Providers rely in support of this argument, *Briney v. Williams*, 143 Ind.App. 691, 242 N.E.2d 132 (1968), has been arguably weakened by the subsequent adoption of Evidence Rules 703 and 705.

court's partial denial of their motion to strike Dr. Pohnert's affidavit.

■ As to whether Dr. Pohnert's affidavit is legally sufficient without the designation of Mills's medical records, Indiana Evidence Rules 703 and 705 provide the necessary guidance. Evidence Rule 703 provides,

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. Experts may testify to opinions based on inadmissible evidence, provided that it is of the type reasonably relied upon by experts in the field.

Judge Robert Miller has described the effect of the rule as follows:

> Rule 701 requires that opinion testimony be based on the witness's personal perception. Rule 703 eliminates that requirement for witnesses offering expert testimony within the meaning of Rule 702. Rule 703 allows an expert witness to base an opinion on (i) facts perceived by the witness, (ii) facts made known to the witness at the hearing in which the testimony is offered, or, (iii) within limits, facts or data made known to the expert before the hearing. The rule establishes no preference among these methods, and an expert may, consistent with Rule 703, rely on a combination of the methods.

13 ROBERT LOWELL MILLER, JR., INDIANA PRACTICE, INDIANA EVIDENCE § 703.101, 411–12 (2d ed.1995) (footnotes omitted). Thus, Evidence Rule 703 allows an expert to base an opinion on facts or data made known to the expert before a hearing, even if the facts or data are neither admitted nor admissible in evidence, if the information is of the type reasonably relied upon by experts in the field. Additionally, Indiana Evidence Rule 705 provides, "The expert may testify in terms of opinion or inference and give reasons therefor without first testifying to the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination."

Here, Dr. Pohnert relied on Mills's medical records from Methodist Hospital and OrthoIndy, which are certainly the type of information reasonably relied upon by experts in the field, and his affidavit sets forth his opinion that Healthcare Providers did not provide the requisite level of care. We recognize that pursuant to Trial Rule 56(C), neither the trial court nor the appellate court may look beyond the designated evidence. *Miller v. Monsanto Co.*, 626 N.E.2d 538, 542 (Ind.Ct.App.1993). We do not do so here. Given that Mills is required to respond only to the medical review panel's opinion that the evidence does not support a conclusion that Healthcare Providers did not comply with the appropriate standard of care, we conclude that Dr. Pohnert's affidavit is not legally insufficient merely because Mills's medical records were not attached or designated.

■ We conclude that, even without the portions of Dr. Pohnert's affidavit that refer to Mills's affidavit, Dr. Pohnert's affidavit is sufficient to establish a genuine issue of material fact as to whether Healthcare Providers complied with the appropriate standard of care. Thus, the trial court abused its discretion in finding that the portions of Dr. Pohnert's affidavit that remained were legally insufficient to oppose the designation of Healthcare Providers.[7] We therefore reverse the trial

7. Consequently, we do not reach Mills's

claims that the trial court abused its discre-

court's entry of summary judgment in favor of Healthcare Providers and remand for further proceedings.

Reversed and remanded.

FRIEDLANDER, J., and MAY, J., concur.

tion in striking the portions of Dr. Pohnert's affidavit that referred to her affidavit, that the trial court abused its discretion in denying Mills's motion for extension of time to respond to Healthcare Providers' motions for summary judgment; and that the trial court abused its discretion in denying Mills's motion to amend her affidavit. With regard to the last claim, we note that the Trial Rules cited by Mills in support of this claim are inapplicable. Indiana Trial Rules 56(E) governs the *supplementation* rather than amendment of affidavits. Trial Rule 56(F) applies when affidavits are unavailable. Finally, Indiana Trial Rule 56(I) applies to the alteration of time limits. However, under the circumstances here, we think that the interests of justice and fairness would have been served had the trial court granted Mills's motion to amend. We fail to discern how Healthcare Providers would have been prejudiced given that the substance of Mills's affidavit had been known to Healthcare Providers for years and the time needed to amend the affidavit would not have resulted in any significant delay.