**John BARKER, Appellant–Plaintiff,**

**v.**

**OFFICE OF the ADJUTANT GENERAL OF the STATE of Indiana, Appellee–Defendant.**

**No. 49A02–0812–CV–1130.**

Court of Appeals of Indiana.

June 10, 2009.

Neal F. Eggeson, Jr., Haskin, Lauter & LaRue, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Frances H. Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

BAKER, Chief Judge.

Appellant-plaintiff John Barker appeals the grant of summary judgment in favor

of the appellee—defendant Office of the Adjutant General of the State of Indiana (Adjutant General), after the Military Department rejected his request for reemployment and benefits in a civil service position. Specifically, Barker argues that his action against the Adjutant General for reinstatement and for damages was not subject to summary judgment because a genuine issue of material fact exists whether he intended to engage in "career" or "noncareer" military service. Appellant's Br. p. 12. The Adjutant General cross-appeals and argues that Barker's action is barred by the statute of limitations.

Concluding that the trial court properly entered summary judgment in favor of the Adjutant General, we affirm.

## FACTS

Sometime in 1972 or 1973, Barker joined the Indiana National Guard (National Guard). Sometime thereafter, while still a member of the National Guard, Barker was hired as a civil service technician and worked as a maintenance mechanic at Camp Atterbury. To hold that civil service technician position, Barker was required to maintain membership in the National Guard.

In 1980 or 1981, Barker was promoted to the position of Operations and Training Readiness Specialist and was assigned to work in Kokomo. In 1983, Barker applied for a position in the Active Guard Reserve (AGR). The AGR is a program authorized under 10 U.S.C. § 12301(d) and 32 U.S.C. § 502(f) and is designed to provide highly qualified officers and enlisted soldiers to meet the fulltime support requirements for the Army National Guard of the United States (ARNGUS) and United States Army Reserve (USAR) projects and programs.

When Barker initially joined the AGR, the Veterans' Reemployment Rights Act of 1974 (VRRA) was in effect.[1] In general, the VRRA provided that a person wishing to perform military service "shall upon request be granted a leave of absence by such person's employer for the period required to perform active duty for training or inactive duty training in the Armed Forces...." 38 U.S.C. § 2024(d). After the employee's release from duty, he or she was permitted to return to the position with seniority, pay and other benefits that the employee would have had "if such employee had not been absent for such purposes." *Id.* However, in 1994, Congress replaced the VRRA with the Uniformed Services Employment and Reemployment Rights Act (USERRA),[2] which broadened the protections that VRRA had afforded, including "prompt reemployment" to those who engage in "noncareer service in the uniformed services." 38 U.S.C. § 4301(a)(1)-(2).

Soldiers who desire to be considered for AGR positions with the National Guard submit application packets pursuant to Army and National Guard regulations. While the AGR includes an initial three-year commitment, Barker could, thereafter, have decided that he did not want to remain in the AGR. In other words, there was no further obligation for Barker to remain in the AGR after the initial three-year signup. Subsequent periods of duty for AGR officers, including warrant officers and commissioned warrant officers, are voluntary and last for an indefinite period of time. Also, when serving under Title 32, ARNGUS soldiers may resign or request release from active duty at any time.

---

**1.** 38 U.S.C. § 2021 et seq.

**2.** 38 U.S.C. § 4301 et seq.

Barker went through the approval process for the AGR program, which included passing an initial entry physical examination and meeting certain educational and training requirements. When Barker was accepted into the AGR, he separated from his civil technician position. He began the AGR service in August 1983.

In February 1987, Barker purportedly asked Major Michael Brinkman for permission to speak to Human Resources "about civil service reemployment rights." Appellant's App. p. 79. Barker then spoke with Colonel Runyon, and expressed that he wanted "out of the AGR program." *Id.* In response, Colonel Runyon purportedly instructed Barker to "keep your nose clean, stay out there, keep on working. Put your time in at the battalion levels and then you'll come back to state headquarters later in your career." *Id.*

When Barker's civil service employment was terminated, he was paid for unused accrued leave. Barker also withdrew all of the funds from his retirement account through the Civil Service Retirement System. Orders that were issued after Barker's initial three-year tour with the AGR indicate that they were subject to Barker's consent. Barker's orders dated June 1, 1986, stated, "By issuance and acceptance of this order, individual affected and State authorities consent to placing the individual affected automatically on active duty...." Appellant's App. p. 51. Barker's orders dated January 23, 1989, stated "You are ordered to AGR with your consent and the consent of the Governor of Indiana." *Id.* at 53. Barker's orders dated April 20, 1989, stated "You are ordered to AGR with your consent and the consent of the Governor...." *Id.* at 55. Orders dated September 29, 1989, stated "You are ordered to AGR with your consent and the consent of the Governor" *Id.* at 57. Orders dated February 27, 1991, stated "You are ordered to full-time National Guard duty (FTNGD) with your consent and the consent of the Governor ... in Active Guard/Reserve (AGR)...." *Id.* at 61.

On several occasions between February 1990 and June 1993, Barker spoke with Major Patrick D. Gibson concerning his desire to return to a civil service position as a technician. *Id.* at 84. Thereafter, in 1992 or 1993, Barker approached General James A. Barney and indicated that he would like to "convert back to a ... civil service position." *Id.* at 81. General Barney conferred with the Adjutant General, who concurred that Barker's change to a civil service position was appropriate. At that time, however, there were no available slots with a commensurate grade. General Barney then told Barker that the matter would be revisited in sixty to ninety days when a slot became available. However, General Barney eventually apologized to Barker and told him that he had probably "forgotten" about the matter. *Id.* at 106.

On November 7, 1994, Barker completed a formal application for a civil service technician position as a maintenance supervisor. Although Barker interviewed for that position, he was not selected. In late December 1994, Barker received a written directive from Lieutenant Colonel Leslie Webster informing him that under the newly-passed USERRA, Barker's reemployment rights and benefits would expire on December 14, 1999, unless he reverted back to technician status.

In early 1995, Barker met with Lieutenant Colonel Webster and again requested to return to civil service by reemployment with the National Guard. Barker indicated in his deposition that Lieutenant Colonel Webster responded, "John, you've got five years to ... convert back and then the compatibility issue, you have to be in a compatible grade, we have to find you a vacancy of where we're going to put you at

to get that accomplished." *Id.* at 84–85. Barker and Lieutenant Colonel Webster repeated this conversation on occasion over the next several years.

Barker's orders of September 22, 1995, stated "You are on active duty in Active Guard/Reserve (AGR) status, and with your consent and the consent of the Governor . . . will proceed on permanent change of station. . . ." *Id.* at 64. Barker's orders dated July 16, 1998, stated "You are on active duty in Active Guard/Reserve (AGR) status, and with your consent and the consent of the Governor . . . will proceed on permanent change of station. . . ." *Id.* at 66.

Sometime in 1999, Barker again requested restoration to civil service with the National Guard by way of formal correspondence. In response, Lieutenant Colonel Donald B. Spice authored a November 23, 1999, memorandum denying Barker's request on the grounds that his reemployment rights actually had expired in August 1987.

On December 17, 1999, Barker requested that the United States Department of Labor (Department of Labor) refer his claim to the U.S. Attorney General's office. In a response authored the same day, the Department of Labor acknowledged receipt of Barker's request and indicated that "this office's recommendation will be that litigation be pursued." *Id.* at 102. However, approximately five years after submitting Barker's request to the Attorney General's office, the Department of Labor notified Barker that the Attorney General's office had declined to accept his case for representation. That letter advised Barker that the Attorney General's decision "does not preclude you from pursuing your claim with private counsel at your own expense." *Id.* at 104.

The undisputed evidence establishes that Barker held the following assignments in the AGR:

> Training officer in Marion, Indiana, from August 1983 to 1998 or 1989.
>
> Senior training officer and then Area Commander in Recruiting and Retention Command in Indianapolis from approximately 1989 to 1995.
>
> Senior fulltime officer in Kokomo from 1995 to 1998
>
> Commander and senior fulltime officer in South Bend from 1998 to 1999.

*Id.* at 38–40.

Barker remained in the AGR until he retired from the military on April 30, 2000. He entered the AGR at the rank of Second Lieutenant and retired from the AGR with the rank of Lieutenant Colonel. Barker was eligible for retirement benefits when he retired from the military and he continues to draw monthly retirement benefits that total $46,000 per year.

In September or October of 1999, Barker submitted a memorandum to the Adjutant General requesting reemployment in a civil service position. However, in November 1999, the Military Department disapproved Barker's request for reemployment. The notice indicated that Barker's termination from civilian service was effective in 1983, and his "reemployment rights were for a period of four . . . years from [his] date of termination," which would have been in 1987. *Id.* at 46.

On August 7, 2007, Barker filed a complaint against the Adjutant General "for violating his rights as protected by [USERRA]." *Id.* at 6. In particular, Barker alleged that

> 30. [He] took adverse employment actions against Barker based on his status as a member of the uniformed services and/or his military leave.

31. [The Adjutant General] failed and/or refused to reemploy [him] in violation of 38 U.S.C. §§ 4312 and 4313.

32. [The Adjutant General's] unlawful actions were intentional, willful, and done in reckless disregard of [his] rights as protected by USERRA.

33. [The Adjutant General's] actions violated Barker's rights under USERRA.

*Id.* at 8. Barker requested that the Adjutant General be enjoined from continuing to violate his rights under USERRA, that he be reinstated to "the requisite position," and that he be awarded damages. *Id.* at 9.

On July 30, 2008, the Adjutant General filed a motion for summary judgment, arguing that he was entitled to a judgment as a matter of law, claiming that Barker's action was barred under the applicable statute of limitations. In the alternative, the Adjutant General alleged that Barker could not establish a violation of USERRA because he "had a military career and USERRA applies only to non-career service." *Id.* at 31.

Following a hearing on October 27, 2008, the trial court granted the Adjutant General's motion for summary judgment. Barker now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

When reviewing a grant or denial of summary judgment, our well-settled standard of review is the same as it was for the trial court: whether there is a genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. *Landmark Health Care Assocs., L.P. v. Bradbury*, 671 N.E.2d 113, 116 (Ind.1996). Summary judgment should be granted only if the evidence sanctioned by Indiana Trial Rule 56(C) shows that there is no genuine issue of material fact and the moving party de-

serves judgment as a matter of law. Ind. T.R. 56(C); *Blake v. Calumet Constr. Corp.*, 674 N.E.2d 167, 169 (Ind.1996). "A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed facts are capable of supporting conflicting inferences on such an issue." *Scott v. Bodor, Inc.*, 571 N.E.2d 313, 318 (Ind.Ct.App.1991). All evidence must be construed in favor of the opposing party, and all doubts as to the existence of a material issue must be resolved against the moving party. *Tibbs v. Huber, Hunt & Nichols, Inc.*, 668 N.E.2d 248, 249 (Ind. 1996).

We also note that the party appealing from the grant of summary judgment has the burden of persuading this court that the trial court erroneously determined that there is no material issue of fact and the movant was entitled to summary judgment as a matter of law. *Ind. Bd. of Pub. Welfare v. Tioga Pines*, 622 N.E.2d 935, 940 (Ind.1993). Additionally, when material facts are not in dispute, our review is limited to determining whether the trial court correctly applied the law to the undisputed facts. *Mills v. Berrios*, 851 N.E.2d 1066, 1069 (Ind.Ct.App.2006). We review a question of law de novo. *Id.* Finally, if the trial court's grant of summary judgment can be sustained on any theory or basis in the record, we will affirm. *Beck v. City of Evansville*, 842 N.E.2d 856, 860 (Ind.Ct.App.2006), *trans. denied.*

### II. Barker's Claim

Barker argues that the undisputed and overwhelming evidence established that he "intended to return to his civil service technician position" and "engage in non-career military service." Appellant's Br. p. 7, 14. As a result, Barker claims that the trial court erred in granting summary

judgment for the Adjutant General in light of those disputed issues of material fact.

As noted above, both the VRRA—which was in effect when Barker joined the AGR—and USERRA, which replaced VRRA and became effective in 1994, require individuals to request a leave of absence before leaving civilian employment and joining the armed forces. More specifically, the following provision of VRRA pertained to reemployment rights:

[Any covered person] shall upon request be granted a leave of absence by such person's employer for the period required to perform active duty for training or inactive duty training in the Armed Forces of the United States. Upon such employee's release from a period of such ... [duty] ... such employee shall be permitted to return to such employee's position with such seniority, status, pay, vacation as such employee would have had if such employee had not been absent for such purposes.

38 U.S.C. § 2024(d). USERRA has a similar requirement, and provides that a person who will be absent from a position because of service in the uniformed services is entitled to reemployment rights if "the person (or an appropriate officer of the uniformed service in which such service is performed) has given advance written or verbal notice of such service to such person's employer." 38 U.S.C. § 4312(a)(1).

Prior to the adoption of USERRA, cases interpreting VRRA determined that a claimant has no right to be restored to a civilian job where the employee pursued a military career. For instance, in *Paisley v. City of Minneapolis*, 79 F.3d 722 (8th Cir.1996), the record demonstrated that a police officer had voluntarily resigned his civilian job as a police officer and sought and received pension benefits and refunds from the police department, *Id.* at 724–25.

After entering active duty service with the National Guard in 1979 for an initial two years, Paisley voluntarily extended his active duty multiple times, until he retired from the National Guard in 1994. Under those circumstances, the court determined that "Paisley waived any reemployment rights to which he may have been entitled under the [VRRA]." *Id.* at 726.

Also, *Kiszka v. Office of Personnel Management*, 372 F.3d 1301 (C.A.Fed.2004)—a case decided under the VRRA—involved an employee who wished to be reemployed after military service. Kiszka was required to request a leave of absence at the time of entering the service. *Id.* at 1307. Kiszka was a civilian technician who separated from the Massachusetts National Guard in order to enter the AGR. He was terminated and he neither requested—nor was offered—a leave of absence. Kiszka served ten years in the AGR, and the court upheld a finding that Kiszka was not entitled to reemployment rights under the VRRA. That finding was based on 38 U.S.C. § 2024(d), which "expressly conditioned the employee's right to be returned to civilian employment, under Title 38, on his having requested leave from his employer." *Id.* at 1303. Moreover, it was determined that "the statute does not contemplate that an employee is automatically granted a leave of absence without the need to request one." *Id.* at 1307. As a result, the *Kiszka* court upheld the federal Merit Systems Protection Board's determination that a civilian technician who terminated employment with the National Guard upon entering AGR service was not entitled to reemployment under the VRRA. The *Kiszka* court noted that "the plain language of [38 U.S.C. § 2024(d)] expressly conditioned the employee's right to be returned to civilian employment, under Title 38, on his having requested leave from his employer." *Id.* at 1303. Moreover, "the statute does not contemplate

that an employee is automatically granted a leave of absence without the need to request one." *Id.* at 1307.

■ Although Barker argues that he was never advised or counseled regarding his separation from the civil service, he has not presented any evidence demonstrating that he requested a leave of absence from his civil service position upon deciding to enter the AGR. In accordance with *Kiszka,* it would not matter even if Barker had incorrectly been told that he was not required to give notice. The court agreed with the Office of Personnel Management's decision that "even if a government official had misinformed Mr. Kiszka regarding his right to a leave of absence, the government cannot now be estopped from denying Mr. Kiszka reemployment rights." 372 F.3d at 1307.

■ We also note that Barker did not engage in "non-career" service, as required by the reemployment provisions of VRRA and USERRA. The regulations promulgated under USERRA define "non-career service" as follows:

> The period of active uniformed service required to complete the initial uniformed service obligation; a period of active duty or full-time National Guard duty that is for a specified purpose and duration with no expressed or implied commitment for continued active duty; or participation in the Reserve component as a member of the Ready Reserve performing annual training, active duty for training or inactive duty training. *Continuous or repeated active uniformed service or full-time National Guard duty that results in eligibility for regular retirement from the Armed Forces is not considered non-career service.*

32 C.F.R § 104.3 (emphasis added).

Here, the designated evidence shows that Barker, indeed, had continuous active uniformed service totaling seventeen years. He started with AGR in 1983 and retired in 2000. Appellant's App. p. 35, 40–41. As discussed above, Barker repeatedly extended his three-year commitments. *Id.* at 50–68. And, in 2000, Barker retired from the AGR at the rank of Lieutenant Colonel, and he continues to draw monthly retirement benefits totaling $46,000 per year. *Id.* at 30, 37, 40–41. In light of these circumstances, it is apparent that the facts here match the language of the federal regulation that describes what is *not* considered "non-career" service. As was explained in *Woodman v. Office of Personnel Management:*

> In enacting USERRA, Congress stated that new section 4301 of title 38 would state that the purpose of chapter 43 is to encourage non-career service in the uniformed services.... The Committee intends this section to be helpful to courts construing the statute. Although current law does not contain an express statement of purpose, the Committee believes that the principles enunciated in new section 4301 have served as a basis for the VRR law since its beginning in 1940.

258 F.3d 1372, 1377 (C.A.Fed.2001) (quoting S.Rep. No. 103–158, 103rd Cong. 1st Sess., 40(1993)).

In *Woodman,* the court upheld the determination that the claimant waived his reemployment rights by abandoning his civilian career in favor of one in the military. *Id.* at 1378. In reaching this conclusion, the court observed that Woodman served continuously and repeatedly for fourteen years as a full-time member of the AGR, his service resulted in eligibility for a regular retirement from the military, and he actively sought service extensions. *Id.* Although the evidence showed that Woodman had not formally resigned from his civilian job, the court concluded that "[his] actions created a de facto resignation," *Id.* at 1378–79. Like the circumstances in *Woodman,* Barker's seventeen

years as a fulltime member of the AGR, his regular retirement from the military, and the fact that he actively sought service extensions, all suggest his "de facto resignation" from civilian service.

Also on point is *Dowling v. Office of Personnel Management*, 393 F.3d 1260 (C.A.Fed.Cir.2004), where the court upheld a finding that a civilian technician who had left his position to enter the AGR program was not entitled to restoration as a civilian technician upon completion of twelve years of AGR service. The evidence showed that the claimant, Dowling, had not requested a leave of absence from his civilian position when he entered into AGR service. Instead, he separated from the civilian position. *Id.* at 1263. Dowling also "withdrew all of his civilian retirement contributions before leaving his civilian employment and entering into AGR service." *Id.*

In light of the above, it is apparent that Barker continued his military career "step by step" for seventeen years, effectively making a career of the service. At the same time, however, he expected the Adjutant General to hold a place open for him. In our view, such is not the purpose of USERRA or the VRRA. Barker has not presented any evidence that he requested a leave of absence from his civil service position upon deciding to enter AGR service. Moreover, the undisputed facts demonstrate that Barker was engaged in career military service rather than non-career military service. He voluntarily applied for and entered the AGR program. When Barker was accepted into the AGR, he separated from his civil technician position. When Barker left the civil service, he withdrew all funds from his retirement fund through the Civil Service Retirement System and received unused accrued leave.

Although Barker could have decided after three years that he did not want to remain in the AGR, the orders that were issued after his initial three-year tour indicate that they were subject to Barker's consent. His AGR service commenced on August 15, 1983, and he did not leave the AGR program until April 2000—almost seventeen years later—when he retired with full military retirement benefits. Thus, Barker cannot establish a violation of USERRA. Moreover, because the designated evidence establishes that Barker's active duty service was career service and not "non-career service," as required for protection under USERRA, Barker was not entitled to reemployment as a civilian technician under USERRA. As a result, we conclude that summary judgment was properly entered for the Adjutant General.[3]

The judgment of the trial court is affirmed.

MAY, J., and BARNES, J., concur.

---

**3.** In light of our disposition above, we need not address the Adjutant General's contention on cross-appeal that Barker's claims were time-barred. Nonetheless, we note that although a split of authority once existed in various jurisdictions as to whether a statute of limitations applied to actions like the one Barker pursued, Congress amended USERRA in 2008 as follows: "[i]f any person seeks to file a complaint or claim with ... a Federal or State court ... alleging a violation of [US-ERRA], there shall be no limit on the period for filing the complaint or claim." 38 U.S.C. § 4327(b). Moreover, at least one court has recently concluded that the USERRA amendments obviate the need to address a statute of limitations argument—even for claims accrued and filed prior to passage of the amendments. *See Potts v. Howard Univ. Hosp.*, 598 F.Supp.2d 36, 40 n. 4 (D.D.C.2009) (applying the 2008 amendments to a claim that was filed in April 2008, which accrued in 2002).