## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 25 2016, 5:32 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

David Van Gilder
Andrew P. Simmons
Lindsay A. Davenport
Van Gilder & Trzynka, P.C.
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Kathleen A. Kilar
Andrew S. Williams
Jeremy D. Lemon
Hunt Suedhoff Kalamaros LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| The Estate of Diana K. Blake by Nicole Walker, Personal Representative, <br><br> *Appellant-Plaintiff,* <br><br> v. <br><br> Select Specialty Hospital-Fort Wayne, Inc., <br><br> *Appellee-Defendant.* | May 25, 2016 <br><br> Court of Appeals Case No. 02A03-1511-PL-2030 <br><br> Appeal from the Allen Superior Court <br><br> The Honorable Stanley A. Levine, Judge <br><br> Trial Court Cause No. 02D03-1412-PL-469 |

**Kirsch, Judge.**

[1]     The Estate of Diana K. Blake ("Blake") by Nicole Walker, Personal

Representative ("the Estate"), appeals the trial court's grant of summary

judgment in favor of Select Specialty Hospital-Fort Wayne, Inc. ("the Hospital") on the Estate's medical malpractice claim. The Estate raises two issues of which we find the following dispositive: whether the trial court erred in granting summary judgment in favor of the Hospital because the Estate contends that the designated evidence established a genuine issue of material fact that the Hospital breached its standard of care to Blake.

We reverse and remand.

## Facts and Procedural History

On January 26, 2011, Blake underwent a left femoral anterior tibial bypass surgery, which was performed by John F. Csicsko, M.D. ("Dr. Csicsko"), a thoracic surgeon with Lutheran Hospital. The surgery entailed a left-side groin wound in which a section of vein was grafted into an artery in Blake's leg. Following the surgery, Blake was transferred to St. Joseph Hospital for continuing care. While there, she was treated for an infection due to a non-healing left leg wound. On February 19, 2011, Blake underwent a second surgery, in which a debridement was performed by Dr. Csicsko, and a section of Blake's sartorius muscle was pulled and sutured over the vein graft to help protect the graft. To assist in healing, a Vacuum Assisted Closure ("VAC") system was applied over the wound. On February 24, 2011, Blake was transferred to the Hospital for continuing care, including wound care which involved changing the VAC dressing every three days.

Patricia Gerig, RN ("Nurse Gerig"), who was employed by the Hospital, performed the wound care on February 25, and again on February 28, by changing the VAC dressing. Nurse Gerig testified that, on each date, she applied an adaptic layer over the wound in Blake's left groin before applying the black sponge, which was part of the VAC dressing. However, Blake's medical records did not contain any notations indicating that the adaptic layer was applied during either of the VAC dressing changes. On February 28, Nurse Gerig completed the wound care at 11:30 a.m. At approximately 4:30 p.m. on February 28, a code was called due to Blake having developed an acute bleed from her left groin wound. Blake was not able to be resuscitated, and she died. During the code, Dr. Csicsko observed that the sartorius muscle was dislodged, and the vein graft was clearly visible in the wound.

On April 27, 2012, the Estate filed a Proposed Complaint against the Hospital with the Indiana Department of Insurance. A Medical Review Panel was formed consisting of two physicians and one nurse. On September 17, 2014, the Medical Review Panel reached a unanimous opinion that the Hospital did not breach its standard of care and that the "conduct complained of was not a factor of the resultant damages." *Appellant's App*. at 5-10. On December 4, 2014, the Estate filed a civil complaint in the Allen County Superior Court against the Hospital. The Hospital filed a motion for summary judgment based on the Medical Review Panel's determination. After the Estate filed its response to the summary judgment motion and designated evidence, the Hospital moved to strike portions of the designated evidence, including an

affidavit by Carol White ("White"), a registered nurse and nurse practitioner ("the Affidavit"). A hearing was held on the motion to strike, and the trial court granted the motion, striking the Affidavit. A hearing was later held on the Hospital's motion for summary judgment, and on October 28, 2015, the trial court granted summary judgment in favor of the Hospital. The Estate now appeals.

## Discussion and Decision

[6] When reviewing the grant of summary judgment, our standard of review is the same as that of the trial court. *FLM, LLC v. Cincinnati Ins. Co.,* 973 N.E.2d 1167, 1173 (Ind. Ct. App. 2012) (citing *Wilcox Mfg. Grp., Inc. v. Mktg. Servs. of Ind., Inc.,* 832 N.E.2d 559, 562 (Ind. Ct. App. 2005)), *trans. denied.* We stand in the shoes of the trial court and apply a *de novo* standard of review. *Id.* (citing *Cox v. N. Ind. Pub. Serv. Co.,* 848 N.E.2d 690, 695 (Ind. Ct. App. 2006)). Our review of a summary judgment motion is limited to those materials designated to the trial court. Ind. Trial Rule 56(H); *Robson v. Tex. E. Corp.,* 833 N.E.2d 461, 466 (Ind. Ct. App. 2005), *trans. denied.* Summary judgment is appropriate only where the designated evidence shows there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. T.R. 56(C). For summary judgment purposes, a fact is "material" if it bears on the ultimate resolution of relevant issues. *FLM,* 973 N.E.2d at 1173. We view the pleadings and designated materials in the light most favorable to the non-moving party. *Id.* Additionally, all facts and reasonable inferences from those facts are construed in favor of the non-moving party. *Id.* (citing *Troxel Equip.*

*Co. v. Limberlost Bancshares,* 833 N.E.2d 36, 40 (Ind. Ct. App. 2005), *trans. denied*). Under Indiana's summary judgment procedure, the party moving for summary judgment has the burden of establishing that no genuine issue of material fact exists. *Lacy-McKinney v. Taylor Bean & Whitaker Mortg. Corp.,* 937 N.E.2d 853, 865-66 (Ind. Ct. App. 2010) (citing *Jarboe v. Landmark Cmty. Newspapers,* 644 N.E.2d 118, 123 (Ind. 1994)). Only after the moving party has met this burden with a prima facie showing that no genuine issue of material fact exists does the burden then shift to the non-moving party to establish that a genuine issue of material fact does in fact exist. *Id.* at 866.

[7] A trial court's grant of summary judgment is clothed with a presumption of validity, and the party who lost in the trial court has the burden of demonstrating that the grant of summary judgment was erroneous. *FLM,* 973 N.E.2d at 1173. Where a trial court enters specific findings and conclusions, they offer insight into the rationale for the trial court's judgment and facilitate appellate review, but are not binding upon this court. *Id.* We will affirm upon any theory or basis supported by the designated materials. *Id.* When a trial court grants summary judgment, we carefully scrutinize that determination to ensure that a party was not improperly prevented from having his or her day in court. *Id.*

[8] Cases involving medical malpractice are no different from other kinds of negligence actions regarding that which must be proven. *Giles v. Anonymous Physician I*, 13 N.E.3d 504, 510 (Ind. Ct. App. 2014), *trans. denied*. "Specifically, a plaintiff in a medical malpractice action must prove: (1) duty owed to the

plaintiff by the defendant; (2) breach of duty by allowing conduct to fall below the applicable standard of care; and (3) compensable injury proximately caused by the defendant's breach of duty." *Id.*

[9] When a medical review panel renders an opinion in favor of the physician or hospital, the plaintiff must then come forward with expert medical testimony to rebut the panel's opinion in order to survive summary judgment. *Mills v. Berrios*, 851 N.E.2d 1066, 1070 (Ind. Ct. App. 2006); *Bunch v. Tiwari*, 711 N.E.2d 844, 850 (Ind. Ct. App. 1999). "However, a medical malpractice case based upon negligence is rarely appropriate for disposal by summary judgment, particularly when the critical issue is whether the defendant exercised the appropriate standard of care under the circumstances." *Mills*, 851 N.E.2d at 1070. This issue is generally inappropriate for resolution as a matter of law and is a question that should be reserved for the trier of fact. *Id.* In order to be sufficient to demonstrate the existence of a material fact and make summary judgment inappropriate, an affidavit must establish an expert's credentials, state that the expert has reviewed the relevant medical records, and set forth the expert's conclusion that the defendants violated the standard of care in their treatment which in turn caused the complained of injury. *Id.*

[10] In support of its motion for summary judgment, the Hospital submitted the opinion of the Medical Review Panel, which determined unanimously that the Hospital did not breach its standard of care and that the challenged conduct was not a factor of the resultant damages. *Appellant's App.* at 19-24. That satisfied the Hospital's burden to show there was no genuine issue of material

fact. It was then up to the Estate to designate sufficient expert testimony setting forth facts showing the existence of a genuine issue of material fact for trial. *See Mills*, 851 N.E.2d at 1070. In support of its response in opposition to the Hospital's motion for summary judgment, the Estate designated, among other things, the following evidence: an affidavit by Dr. Csicsko, excerpts from the deposition of Dr. Csicsko, excerpts from the deposition of Nurse Gerig, and excerpts from the deposition of Brian Youn, M.D., who assisted in the attempted resuscitation of Blake. *Appellant's App*. at 33-34.

[11] Dr. Csicsko stated in his affidavit that he is a licensed and practicing physician, specializing in the field of thoracic surgery, and was one of the treating physicians of Blake. The affidavit stated that Dr. Csicsko reviewed Blake's medical records from the Hospital and set forth the relevant facts of Blake's surgery and hospitalization. Dr. Csicsko then stated:

> 12. A properly working wound vac will not dislodge the sartorius muscle flap that I sutured over the vein graft site; the wound vac sponge sticking to the muscle could dislodge it if the vac sponge was not carefully removed. If an adaptic layer had been used the sartorius flap would not likely have been dislodged and the vein graft would not have been directly exposed to the vac pressure.
>
> . . . .
>
> 15. Based on my review of the records and my observations: (a) the grafted vein was not deteriorated due to infection; (b) the protective sartorius muscle flap was dislodged, most likely during a wound vac change; (c) there is no record that an adaptic layer

was applied in the wound vac dressing change on February 25 or February 28, 2011; (d) the vac reservoir was filled with about 1500cc of blood; and (e) the cause of Diane [sic] Blake's cardiac arrest was the acute bleeding through a hole in the grafted vein. It is my opinion that the responsible cause of her death on February 28 was more likely than not a disruption to the vein and subsequent bleed out through the wound vac.

16. It is my opinion that had Ms. Blake been properly cared for at Select Specialty Hospital more likely than not she would have survived.

*Id*. at 98-99.

[12] This testimony was competent to establish that the standard of care for the use of a wound VAC dressing was to use an adaptic layer between the VAC sponge and the fragile vein graft. Additionally, the Estate designated portions of Nurse Gerig's deposition testimony, in which she stated that, in her nursing judgment, an adaptic layer should be used because she "knew the wound vac should be used with caution in graft sites and that it was recommended to use a release layer" and that an adaptic layer should have been used in a vein graft site such as Blake's "[s]o that the sponge doesn't stick to the wound when you're removing it." *Id*. at 113. We find this evidence sufficient to refute the Medical Review Panel's opinion and create a genuine issue of material fact as to whether the Hospital complied with the appropriate standard of care. The trial

court, therefore, erred in granting summary judgment in favor of the Hospital.[1] We reverse the grant of summary judgment in favor of the Hospital and remand for further proceedings.

[13]     Reversed and remanded.

[14]     Riley, J., and Pyle, J., concur.

---

[1] Because we have concluded that the Estate designated sufficient evidence to refute the Medical Review Panel's opinion and to create a genuine issue of material fact without reference to White's affidavit, we do not reach the issue of whether the trial court erred in granting the Hospital's motion to strike White's affidavit.